IN RE: BECKER, AARON MICHAEL, BELL (BECKER), JACOB TRISTAN, BECKER, JOSHUA LEE, BECKER, MATTHEW SETH, AND BECKER, MARK A., MINOR CHILDREN

No. 9229DC436

(Filed 20 July 1993)

1. **Parent and Child § 104 (NCI4th) — petition to terminate father's parental rights — children left in foster care — sufficiency of evidence — dismissal of petition error**

   Evidence was sufficient to withstand respondent father's motion to dismiss a petition for termination of parental rights where it tended to show that the minor children were in foster care for approximately 29½ months prior to the filing of the petition; the father was incarcerated twice during that period; the father failed to maintain employment and to obtain suitable housing for the children following trial placement; he failed to pay child support during the six months prior to the filing of the petition and to participate in counseling and to attend any permanency planning seminars; and DSS provided diligent services to the respondents, including assistance in visitation with the children, assistance in obtaining housing, food stamps, medical care, and transportation, assistance in locating employment, and referral to mental health and AFDC.

   **Am Jur 2d, Parent and Child § 35.**

IN RE BECKER

[111 N.C. App. 85 (1993)]

Parent's involuntary confinement, or failure to care for child as a result thereof, as evincing neglect, unfitness, or the like in dependency or divestiture proceeding. 79 ALR3d 417.

2. **Parent and Child § 106 (NCI4th)— petition to terminate father's parental rights—sufficiency of evidence of failure to pay child support—dismissal of petition error**

The trial court erred in granting respondent father's motion to dismiss a petition for termination of parental rights where the evidence was sufficient to show that respondent father had the ability to pay some child support out of unemployment benefits and a tax refund during the six months preceding filing of the petition, despite his incarceration and his alleged medical disability, but that he willfully failed to pay a reasonable portion of the cost of care during this period.

**Am Jur 2d, Parent and Child § 35.**

Parent's involuntary confinement, or failure to care for child as a result thereof, as evincing neglect, unfitness, or the like in dependency or divestiture proceeding. 79 ALR3d 417.

3. **Parent and Child § 104 (NCI4th)— termination of mother's parental rights—failure to maintain home, pay support, make improvements—sufficiency of evidence**

Evidence was sufficient to support the trial court's findings and conclusions that respondent mother willfully left her children in foster care, made no reasonable progress in correcting the conditions which led to the removal of the children, and willfully failed to pay support for her children where the evidence tended to show that the mother was aware of what she needed to do to regain custody of her children, but she failed to obtain suitable or permanent housing for them and had been "living in the streets"; she maintained employment for only several weeks despite her educational background and good health; she did not attend any counseling sessions, had three criminal convictions, failed to attend some of the scheduled visits with the children, and paid no child support; and DSS provided diligent efforts to encourage the mother to strengthen the parental relationship with the children.

**Am Jur 2d, Parent and Child § 35.**

IN RE BECKER

[111 N.C. App. 85 (1993)]

**Parent's involuntary confinement, or failure to care for child as a result thereof, as evincing neglect, unfitness, or the like in dependency or divestiture proceeding. 79 ALR3d 417.**

Appeals by petitioner, McDowell County Department of Social Services, and respondent, Deondrea Suzanne Becker, from order entered 29 January 1992, in McDowell County District Court by Judge Robert S. Cilley. Heard in the Court of Appeals 1 April 1993.

*Goldsmith & Goldsmith, P.A., by James W. Goldsmith, for petitioner-appellee/cross appellant, McDowell County Department of Social Services.*

*Story, Hunter & Evans, P.A., by W. Hill Evans, for petitioner-appellee/cross appellant, Guardian ad Litem for the minor children.*

*Carnes and Franklin, P.A., by Hugh J. Franklin, for respondent mother-appellant.*

*H. Russell Neighbors, Jr. for respondent father-appellee.*

McCRODDEN, Judge.

The McDowell County Department of Social Services (DSS) appeals from the trial court's dismissal of its petition to terminate the rights of respondent father, Mark Terrell Becker (father), in his five minor children. The respondent mother of the children, Deondrea Suzanne Becker (mother), cross-appeals from an order terminating her parental rights pursuant to N.C. Gen. Stat. § 7A-289.32 (1989). The resolution of both appeals necessitates a review of the evidence.

On 11 May 1988, DSS obtained custody of respondents' five children because the mother was incarcerated and DSS could not locate the father. A few days after placement of the children in foster care, DSS determined that the father was also incarcerated.

On 13 May 1988, the mother obtained her release from jail, but did not make any contact with DSS or the children for almost three weeks. After she contacted the agency on 2 June 1988, DSS assisted her in finding and moving into a residence, and on 1 July 1988, DSS returned the children to her. On 25 July 1988, the mother was again incarcerated and the children were returned to foster

care. By order entered 26 July 1988, the McDowell District Court adjudicated the children as dependent juveniles pursuant to N.C. Gen. Stat. § 7A-517(13) (1989), and DSS received custody of them.

The mother remained incarcerated until 12 December 1988, and the father was incarcerated from 16 May 1988 until 3 May 1989. While the respondents were incarcerated, DSS assisted them in maintaining contact with the children through letters, phone visits, and some jail visits.

After being released from prison on 12 December 1988, the mother failed to attend a scheduled Christmas visit with the children and, until 16 February 1989, failed to make any contact with DSS or the children. After she reestablished contact, DSS again assisted her in arranging visits with the children, finding employment, and attempting to obtain suitable housing for her and the children. Respondent mother, however, did not find suitable housing or obtain a residence at this time.

After the father's release from prison on 3 May 1989, he obtained employment and, on 9 June 1989, reconciled and began living with the mother. DSS helped respondents maintain contact with the children, encouraged them to attend counseling, and offered assistance in obtaining suitable housing. Respondents eventually obtained a residence on 1 December 1989, in Caldwell County, and following a review on 11 January 1990, the court placed the children with respondents on a trial basis.

In July 1990, respondents experienced marital problems and the father left the home. The father reported to DSS that the mother regularly smoked marijuana, failed to prepare food properly for the children, failed to keep the children's clothes clean, left the children unsupervised in the evenings for long periods of time, and was generally not taking good care of the children. On 27 August 1990, DSS returned the children to foster care because of the marital instability of the respondents and the mother's failure to care for the children. On 29 August 1990, the mother's landlord evicted her from her residence.

On 10 October 1990, respondents entered into parent/agency contracts with DSS, in which they agreed to maintain schooling or employment, pay support for the children, obtain individual counseling, refrain from illegal activities, and obtain suitable housing for the children. During the six months prior to filing the

**IN RE BECKER**

[111 N.C. App. 85 (1993)]

termination petition, the mother worked for several weeks and grossed $200.00 per week, but quit her job, citing a lack of transportation. The mother had completed a portion of a college education, was in good health and capable of obtaining employment, and had stated to a social worker that she could obtain employment if she chose to do so. The father, likewise, failed to remain employed during the time the children were in foster care. He was unemployed from February 1990 until July 1990, and from December 1990 until the termination hearing.

In the support agreements, the mother agreed to pay $5.00 per month for the support of the children, and the father agreed to pay $150.00 per month for support. The mother paid no child support for the minor children during the entire time the children were in foster care. During the six months preceding the filing of the termination of parental rights petition (5 January 1991 through 5 July 1991), the father received unemployment benefits in the amount of $135.00 per week from at least 22 February 1991 until 1 April 1991, and in February 1991, he received an income tax refund in the amount of $900.00. Nevertheless, he paid no child support during the six month period preceding the filing of the petition for termination. The cost of care for the minor children was in excess of $45,000.00 at the time of the hearing.

From 1988 until the date of the hearing, both respondents had been incarcerated several times, and neither had attended any counseling sessions. Following their separation, respondents had failed to obtain a suitable residence. The father established temporary residences with his uncle and friends, and the mother was never able to provide DSS with an address where she could be reached. The mother had lived in more than twenty residences, and in her own words, had been living "in the streets."

On 5 July 1991, DSS filed its petition to terminate respondents' parental rights, and the hearing was held on 6 and 7 January 1992. The trial court granted the father's motion to dismiss at the close of DSS's evidence and, at the close of the mother's evidence, entered an order terminating her parental rights.

## DSS's Appeal

DSS's appeal, in which the children's guardian ad litem joins, assigns as error the trial court's dismissal of the petition to terminate the parental rights of the father. DSS contends that the

IN RE BECKER

[111 N.C. App. 85 (1993)]

evidence was sufficient to establish that at least two grounds for terminating parental rights existed pursuant to N.C.G.S. § 7A-289.32.

We note at the outset that the record contains no answer of the father to the petition to terminate his parental rights. The failure of the father to respond to the petition within thirty days after service of summons and petition is grounds for terminating all parental and custodial rights. N.C. Gen. Stat. § 7A-289.28 (1989). Although the father was incarcerated at the time the petition was filed, he had an attorney who had represented him in prior hearings, and there is no reason for his failure to respond.

In granting the father's motion to dismiss, the trial court stated the following:

My reasons as to the father are, as to the neglect allegation, that there has been an insufficient showing even given the deference due the Petitioner at this stage of the proceedings of neglect by the father during periods when he had the opportunity to neglect or not neglect, which periods are somewhat limited by his not having had legal custody during any time relevant to these proceedings.

As to the allegation of wilfully having left the children in foster care, to some extent that is also weakened by the father's lack of legal custody in that it was not up to him to leave or not leave the children in foster care, but to an extent he had a responsibility to act to retrieve the children from foster care.

The statute conditions that responsibility to show improvement on a diligent effort by the Department of Social Services, and I'm aware from the testimony of Mrs. Comer that from May of 1989 the McDowell County Department of Social Services did not offer, nor provide, assistance to the Respondent Father, according to her testimony.

There was testimony by Mr. Ryan that there was assistance in transportation, but given the difficulties to which I will allude momentarily that Respondent Father encountered, the concededly praiseworthy efforts of the Department to provide transportation do not, in my opinion, rise to the level that the statute requires in order to say that someone has failed to respond to diligent efforts.

Finally, to the allegation of six months in the Departmental custody during which there has been a willful failure to provide support; granted that there has been a demonstrated failure to provide direct support, I do not believe that failure can be dubbed willful in light of the intervention of what for want of a better term we may call force measure in the form initially of the—I have to say—inevitable activation of a suspended jail sentence for his failure to meet conditions which were in practical terms probably unmeetable; and later the Respondent Father's medical disability from holding gainful employment.

I do not ignore but do not give a great deal of weight to the information from the Employment Security Commission showing that the father had an income from Unemployment of $133 per week for a period of time from the later part of 1991, even giving due weight to that information, it does not appear to me at this point that there has been a sufficient showing for the Petitioner to carry its burden on the father.

These findings are somewhat at odds with findings the court entered later when it terminated the mother's parental rights. For example, the trial court in those findings determined that DSS had provided to both respondents diligent services which included assistance with visiting their children, aid in obtaining housing, food stamps, medical care, and transportation, and support in locating employment, referral to mental health, and AFDC. N.C. Gen. Stat. § 7A-289.30(e) (1989) requires that "[a]ll findings of fact shall be based on clear, cogent, and convincing evidence." It is difficult to reconcile the two sets of findings except by reference to the transcript which supports the finding that DSS did provide diligent services to the father as well as the mother.

Furthermore, this Court is struck by what appears to be the disparate treatment of the two respondents. Although the trial court used the father's lack of custody as an extenuating factor, it did not do so for the mother. Yet the record indicates their custody coincided. In 1990, after marital discord, the father did abandon the home, and he subsequently criticized the mother for her lack of care; however, marital discord and separation do not eliminate a parent's obligation to his children. Furthermore, a parent does not obviate that obligation by simply calling DSS and complaining about the other parent's failures, as the father did in this case. There is nothing in the record to show that, during

the period he found fault with the mother, he sought to prepare food for the children, keep their clothes clean, supervise them, or otherwise take care of them. Those are a father's responsibilities as well as a mother's.

Moreover, while the father filed no answer to the petition for termination, the mother did, indicating at least her diligent opposition to termination. Finally, the mother operated under some of the same constraints as the father, having been incarcerated a number of times during the relevant period.

With these concerns, we first review arguments made by DSS, in which DSS contends that it provided clear, convincing, and cogent evidence of the existence of at least two grounds to terminate the father's parental rights and that, therefore, the trial court should not have granted the father's motion to dismiss. When a Rule 41(b) motion is made in a nonjury trial, the judge becomes both the judge and jury, and he must consider and weigh all competent evidence before him. *Dealers Specialties, Inc. v. Housing Services*, 305 N.C. 633, 640, 291 S.E.2d 137, 141 (1982); N.C. Gen. Stat. § 1A-1, Rule 41(b) (1990). "The trial judge may weigh the evidence, find the facts and sustain defendant's Rule 41(b) motion at the conclusion of plaintiff's evidence even though plaintiff has made out a prima facie case which would have precluded a directed verdict for defendant in a jury trial." *Childers v. Hayes*, 77 N.C. App. 792, 794, 336 S.E.2d 146, 148 (1985). He may decline to render any judgment until the close of all the evidence, and except in the clearest cases, he should defer judgment until the close of all the evidence. *Helms v. Rea*, 282 N.C. 610, 619, 194 S.E.2d 1, 7 (1973). We note the father's argument that the trial judge weighed the evidence and found that the evidence was insufficient to withstand a motion to dismiss. We find, however, that the evidence was far from making this a "clear case" and that the trial court's dismissal was, therefore, inappropriate.

The grounds for terminating the rights of both parents are found in the following subsections of N.C.G.S. § 7A-289.32:

The court may terminate the parental rights upon a finding of one or more of the following:

. . . .

(3) The parent has willfully left the child in foster care for more than eighteen months without showing to

the satisfaction of the court that reasonable progress under the circumstances has been made within 18 months in correcting these conditions which led to the removal of the child or without showing positive response to the diligent efforts of a county Department of Social Services . . . to encourage the parent to strengthen the parental relationship to the child or to make and follow through with constructive planning for the future of the child. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the child on account of their poverty . . . .

(4) The child has been placed in the custody of a county Department of Social Services . . . and the parent, for a continuous period of six months next preceding the filing of the petition, has willfully failed for such period to pay a reasonable portion of the cost of care for the child although physically and financially able to do so.

A finding of any one of the enumerated grounds in N.C.G.S. § 7A-289.32 is sufficient for the trial judge to terminate parental rights. *In re Pierce*, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984).

[1]   We agree with DSS's argument that it provided sufficient evidence that the father willfully left the minor children in foster care for more than eighteen months without showing that reasonable progress had been made pursuant to N.C.G.S. § 7A-289.32(3). In his written findings of fact, the trial judge determined that, excluding the periods of trial placement, the minor children were in foster care for a period of approximately 29½ months prior to the filing of the petition and that the father had been incarcerated two times during the period that the children were in foster care. Moreover, the father had failed to maintain employment since December 1990, and to obtain suitable housing for the children following the trial placement. He failed to pay child support during the six months prior to the filing of the termination petition and to participate in counseling and attend any permanency planning seminars. As noted above, the court also found that DSS provided diligent services to the respondents, including assistance in visitation with the children, assistance in obtaining housing, food stamps, medical care, and transportation, assistance in locating employ-

ment, and referral to mental health and AFDC. We find that the evidence presented pursuant to N.C.G.S. § 7A-289.32(3) was sufficient to withstand a motion to dismiss.

[2] DSS also contends that it provided sufficient evidence to show that the father willfully failed to pay a reasonable portion of the cost of care during the six month period preceding the filing of the petition. In determining what is a "reasonable portion" under N.C.G.S. § 7A-289.32(4), the parent's ability to pay is the controlling factor. *In re Bradley*, 57 N.C. App. 475, 478, 291 S.E.2d 800, 802 (1982). In *In re Roberson*, the Court stated that "[b]ecause a proper decree for child support will be based on the supporting parent's ability to pay as well as the child's needs, there is no requirement that petitioner independently prove or that the termination order find as fact respondent's ability to pay support during the relevant statutory time period." 97 N.C. App. 277, 281, 387 S.E.2d 668, 670 (1990) (citation omitted). Since the father entered into a voluntary support agreement to pay $150.00 per month, DSS did not need to provide detailed evidence of his ability to pay support during the relevant time period.

The trial judge granted the father's motion to dismiss, stating that the father's failure to pay support was not willful because he was incarcerated from 22 March 1991 until October 1991, and because he was medically disabled. However, the evidence shows that the father paid no child support during the six month period prior to the filing of the petition, although he received unemployment benefits of $135.00 per week from 22 February 1991 through 1 April 1991, and he received an income tax refund in the amount of $900.00 in February 1991. We find that the evidence was sufficient to show that respondent father had the ability to pay some support during the six month period preceding the filing of the petition, despite his incarceration and his alleged medical disability. The trial court erred in granting the father's motion to dismiss on this ground as well.

Because the trial court granted the father's motion to dismiss prior to his putting on evidence, this Court has no choice but to remand this portion of the proceedings to allow the father to present his case. We are aware that, although the petitioner may meet its burden of showing by clear, cogent, and convincing evidence that the grounds for terminating the rights of the father exist, the decision of the trial court is discretionary. *In re Pierce*, 67

N.C. App. 257, 264, 312 S.E.2d 900, 904-05. In making that determination, the trial judge must carefully consider the best interests of the children, *In re Tate*, 67 N.C. App. 89, 96, 312 S.E.2d 535, 540 (1984), and in so doing should consider the fact, as he found, that upon her release from incarceration, the mother, whose termination of rights we affirm, intends to live with the father.

## RESPONDENT MOTHER'S APPEAL

[3] In her appeal, attacking the trial court's entry of an order terminating her parental rights to the five minor children, respondent mother argues, first, that the evidence was insufficient to support the trial judge's findings and conclusions that grounds for terminating her parental rights existed and, second, that the trial judge abused its discretion in terminating her parental rights.

The mother challenges the sufficiency of the evidence on a number of points. First, she argues that she did not willfully leave the minor children in foster care as proscribed by N.C.G.S. § 7A-289.32(3), because she did not do so with purpose and deliberation. We disagree. Even if the mother made some efforts to regain custody of the children, this does not preclude a finding of willfulness. *Tate*, 67 N.C. App. at 94, 312 S.E.2d at 539. The evidence shows that the mother was aware of what she needed to do to regain custody of the children, but she nevertheless failed to improve her condition. Respondent mother entered into a parent/agency contract with DSS which required that she obtain suitable housing for the children, maintain schooling or employment, attend counseling, refrain from illegal activities, visit with the children, and pay child support. The evidence shows that although the children were placed with respondents from 20 January 1990 until 27 August 1990, they were returned to foster care due to the respondents' marital instability and respondent mother's neglect of the children. After the mother was evicted from the apartment, she failed to obtain suitable or permanent housing for the children and had been living "in the streets." From the time the children were placed in foster care until the date of the termination hearing, the mother maintained employment for only several weeks despite her educational background and good health. Furthermore, respondent mother did not attend any counseling sessions, had three criminal convictions, failed to attend some of the scheduled visits with the children, and paid no child support.

Second, the mother argues that she showed reasonable progress in correcting the conditions that led to the removal of the children because some improvement was made. We also reject this argument. There was clear, cogent, and convincing evidence to support the trial judge's finding that the mother had failed to take any action toward improvement, and had made no improvement in remedying the conditions that led to the removal of the children. Although the children were returned to the respondents' home on a trial basis and the mother was employed for several weeks, the evidence shows that the mother failed to obtain positive results in improving the situation. Indeed, at periods of time relevant to the proceeding, respondent mother was unemployed despite being able to work, did not have a suitable residence, and suffered several periods of incarceration.

Third, the mother argues that the trial court erred in finding that DSS made diligent efforts to reunite the family. We disagree, finding ample evidentiary support, as noted in our review of the evidence, for the trial court's determination that DSS provided diligent efforts to encourage the mother to strengthen the parental relationship with the children.

In the mother's fourth argument, she contends that the trial court erred in finding that she willfully failed to pay support according to N.C.G.S. § 7A-289.32(4). Again, we disagree. On 10 October 1990, the mother entered into a voluntary support agreement which required her to pay $5.00 per month for child support. Since there is nothing in the record to indicate that she challenged this amount, the question of whether the amount she was ordered to pay is a reasonable portion of the costs is not before this Court. *Tate*, 67 N.C. App. at 95, 312 S.E.2d at 539.

We must, however, determine whether the trial court's findings of fact support the conclusion that respondent mother willfully failed to pay support. The evidence showed that the mother paid nothing for the cost of care during the entire time the children were in foster care. The mother was employed during the six months preceding the filing of the petition, from May 1991 through June 1991, and earned $200.00 per week. Respondent mother quit the job, citing lack of transportation. There was additional evidence, as the court found, that the mother, after bearing a child by a man other than respondent father, placed the baby for adoption in South Carolina and received as income between $2,000 and $4,000.

Moreover, the mother had completed a portion of college education, was in good health and capable of obtaining employment, and had stated to a social worker that she could obtain employment if she chose to do so. We find that the trial court did not err in concluding that respondent mother willfully failed to pay support.

Respondent mother finally argues that the trial court abused its discretion in terminating her parental rights because termination was not in the best interests of the children. Although the trial judge may terminate a parent's rights upon a finding of any one of the separately enumerated grounds, *Pierce*, 67 N.C. App. at 261, 312 S.E.2d at 903, the trial judge is never required to terminate a parent's rights even though one or more of the conditions authorizing termination exists. *Tate*, 67 N.C. App. at 96, 312 S.E.2d at 540. Since we determine that the trial judge properly concluded that grounds for termination existed, as set forth in N.C.G.S. § 7A-289.32(3) and (4), we hold that the judge did not abuse his discretion in finding that it was in the best interests of the children to terminate the mother's parental rights.

In summary, we reverse the trial court's dismissal of the petition to terminate respondent father's rights and remand for further proceedings consistent with this opinion. With regard to the termination of the mother's parental rights, we affirm.

Affirmed in part; reversed in part.

Judges JOHNSON and ORR concur.