In Re: S.S.S. and S.L.S.
No. COA07-751
Court of Appeals of North Carolina.
Filed December 18, 2007
This case not for publication
Cleveland County Department of Social Services by Charles E. Wilson, Jr., for Petitioner-Appellee.
Janet K. Ledbetter, for Respondent-Appellant.
Pamela Williams, for Appellee Guardian ad Litem.
ARROWOOD, Judge.
Jacqueline S. (Respondent) appeals the trial court's order terminating parental rights of her minor children, S.S.S. and S.L.S. For the reasons set forth below, we affirm the decision of the trial court.
On 27 September 2004, Cleveland County Department of Social Services (DSS), filed a juvenile petition alleging that seven-year-old S.S.S. and two-year-old S.L.S., the children of Respondent, were neglected juveniles. D. Lowe (Lowe) is the father of S.S.S., and S. Bennett (Bennett) is the father of S.L.S.
The petition alleged that the children stayed in a home with "no power," "no water," and "no food," with their maternal grandmother, Jackie M., (grandmother) who "us[ed] crack." The petition also alleged that Respondent has "been involved indomestic violence with her ex-boyfriend, [Bennett.]" On 14 September 2004, Respondent allegedly attempted to "run over [Bennett's new] girlfriend and mother with her car[;]" and the girlfriend and mother responded by "[throwing] bricks at [Respondent's] car[,]" breaking both the front and back windows. S.L.S. was in the car with Respondent at the time.
On 12 January 2005, Respondent stipulated to neglect, and the court entered an order adjudicating S.S.S. and S.L.S. neglected juveniles. The court found that "[S.L.S.] had been exposed to an incident of domestic violence between [Respondent] and [Bennett], and that the juveniles had been frequently left in the care of . . . [grandmother], who was unable to care for herself or the children because of a stroke[.]" The court further found that "the home in which the children were left . . . was filthy and was without power or running water." The court stated that the juveniles "live in an environment injurious to their welfare[,]" and concluded that "the juveniles are neglected . . . as defined by [N.C. Gen. Stat. § 7B-101(15)]."
On 20 April 2005, a review order was entered, stating that Respondent was incarcerated in the Cleveland County Jail for ninety days following her conviction of misdemeanor larceny.
In October 2005, Respondent began dating Darrick Blackmon (Blackmon), and on 16 November 2005, Respondent brought Blackmon to her therapy session at Family Net. DSS expressed concern about Respondent's relationship with Blackmon, because Blackmon had previously been arrested and convicted of multiple counts of assault on a female. Domestic violence was a reason the children initially came into foster care, and despite Blackmon's criminal background, Respondent maintained her relationship and residence with him.
On 20 March 2006, the court entered a permanency planning order, finding that Respondent "continues to reside with [Blackmon,]" and that Blackmon was "convicted of assault on a female[.]" The court further found that Respondent "does not have beds for the juveniles[;]" that Respondent "was recently fired from her job at Applebee's . . . due to excessive absences[;]" and that Respondent "has not been compliant in her recommended psychological treatment." The court found that reunification efforts with Respondent were futile and suspended reunification efforts, sanctioning a plan of adoption.
On 17 April 2006, DSS filed petitions for termination of Respondent's parental rights as to S.S.S. and S.L.S., alleging that Respondent neglected the children, N.C. Gen. Stat. § 7B-1111(a)(1), and that Respondent willfully left the children in foster care for more than twelve months without showing that reasonable progress under the circumstances had been made in correcting the conditions that led to the removal of the children, N.C. Gen. Stat. § 7B-1111(a)(2) (2005). The hearing on the termination petition was set for 13 September 2006, but due to Respondent's giving birth to another child, the hearing was continued and later held on 21 March 2007. On 30 March 2007, the trial court entered an order terminating Respondent's parental rights as to the minor children, S.S.S. and S.L.S. In its order, the court found that the children had been in the custody of DSS since 27 September 2004; that the children lived in an environment injurious to their welfare because they were (1) exposed to domestic violence, (2) left in the care of grandmother, (3) and because the home was "filthy" and "without power or running water." Moreover, the court made a series of findings regarding Blackmon and his history of domestic violence:
. . . [T]here have been at least four separate incidents of domestic violence in the past year in the home of the respondent mother and [Blackmon] which required assistance or intervention by law enforcement.
. . . [Blackmon] pled guilty to two separate offenses of Assault on a Female within the past year in which the respondent mother was the victim. His most recent conviction for Assault on a Female involved an assault upon the respondent mother in October 2006, when she was seven months pregnant.
. . . [Blackmon] admitted to three additional convictions of Assault on a Female that occurred prior to his relationship with the respondent mother.
. . . [T]here were two additional charges of Assault on a Female involving [Blackmon] and the respondent mother which were dismissed. There were also two related charges in which the respondent mother was charged with assaulting [Blackmon] that were also dismissed.
. . . [T]he respondent mother was advised by social workers as early as October 2005 that [Blackmon] had a criminal record involving domestic violence and convictions for assault on a female and that this history would affect the Department's ability to recommend a return of custody of the juveniles to their mother.
. . . [R]espondent mother either could not or would not separate herself from [Blackmon].
. . . [T]he mother's compliance with these various court-ordered treatment services is outweighed by her continued determination and willingness to remain in her relationship with [Blackmon]. The repeated incidents of domestic violence between the respondent mother and [Blackmon] during the past year clearly and convincingly evidence a lack of progress in correcting those conditions which led to the removal of the juveniles from the mother's custody.
The court concluded that it was in the best interest of the children, S.S.S. and S.L.S., that Respondent's parental rights be terminated. From the order terminating Respondent's parental rights, Respondent appeals.

Ineffective Assistance of Counsel
In her first argument, Respondent contends that she received ineffective assistance of counsel at the hearing on the petition to terminate her parental rights. We disagree.
N.C. Gen. Stat. §§ 7B-1101 and 7B-1109(b) (2005) guarantee a parent's right to counsel, including appointed counsel in cases of indigence, in all proceedings related to the termination of parental rights. See In re Oghenekevebe, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996). Implicit in this right to counsel is the right to effective assistance of counsel. Id.
"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." State v. Allen, 360 N.C. 297, 316, 626 S.E.2d 271, 285, cert. denied, ___ U.S. ___, 166 L. Ed. 2d 116 (2006) (citation omitted). "To establish deficient performance, a petitioner must demonstrate that counsel's representation `fell below an objective standard of reasonableness.'" Wiggins v. Smith, 539 U.S. 510, 521, 156 L. Ed. 2d 471, 484 (2003) (citing Strickland v. Washington, 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693 (1984)).
"Generally, `to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Allen, 360 N.C. at 316, 626 S.E.2d at 285 (quoting Wiggins, 539 U.S. at 521, 156 L. Ed. 2d at 484). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation omitted).
In the instant case, Respondent specifically argues that Respondent's counsel was deficient by failing to object to DSS's examination of Respondent and Blackmon regarding their criminal records. Respondent states that the records were not certified copies of public records or self-authenticating pursuant to N.C. Gen. Stat. § 8C-1, Rule 902, and that counsel's failure to object to questioning regarding the records prejudiced the outcome of the proceeding. Respondent argues that the "uncorroborated incidents of domestic violence . . . [were] the sole basis to find grounds to terminate the parental rights of [Respondent]."
After a thorough review of the record, we disagree with Respondent's assertion that the incidents of domestic violence were uncorroborated. Without regard to the disputed line of questioning regarding Respondent's and Blackmon's criminal records, other undisputed evidence was admitted to corroborate the history of domestic violence, which in its termination order, the trial court set out from the record. For example, months prior to the hearing, a DSS investigation revealed Blackmon's numerous arrests and convictions for assault on a female. Moreover, a magistrate's order showed that on 5 August 2006, Respondent was arrested for the offense of assault with a deadly weapon because she struck Blackmon in the mouth with an iron. A second magistrate's order revealed that on 10 May 2006, Respondent was arrested for assault with a deadly weapon because she struck or drove over Blackmon with a Chevrolet Celebrity. Other undisputed evidence supporting the trial court's findings of fact regarding domestic violence in Respondent's home includes the following: DSS reports spanning from 14 December 2005 to the time of the termination proceeding regarding Respondent's relationship with Blackmon and Blackmon's "criminal record consisting of assaulting a female[;]" DSS's documented concern regarding Blackmon's incidents of domestic violence, especially considering that the children were initially removed from Respondent's custody partially, if not primarily, due to domestic violence; and Blackmon's repeated refusal to verify his compliance with "court-ordered domestic violence treatment."
We conclude that there is not a reasonable probability that, but for counsel's failure to object to DSS's questioning, the result of the proceeding would have been different. Due to the other undisputed evidence corroborating Respondent's and Blackmon's history of domestic violence, the questioning regarding an uncertified copy of their criminal record did not prejudicially affect the outcome of the termination proceeding. This assignment of error is without merit.

Clear, Cogent and Convincing Evidence
In her next argument, Respondent contends that the trial court's findings of fact are not supported by clear, cogent and convincing evidence, and therefore, the findings do not support the trial court's conclusion that Respondent willfully left the children in foster care or placement outside the home for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting those conditions which led to the removal of the children. G.S. § 7B-1111(a)(2). We disagree.
"In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen. Stat. § 7B-1111(a) exists." In re C.C., J.C., 173 N.C. App. 375, 380, 618 S.E.2d 813, 817 (2005) (citation omitted). "Our review of the trial court's findings of fact is limited to whether there is competent evidence to support the findings[.]" In re Pope, 144 N.C. App. 32, 40, 547 S.E.2d 153, 157 (Tyson, J., dissenting), aff'd, 354 N.C. 359, 554 S.E.2d 153 (2001) (citing Starco, Inc. v. AMG Bonding and Ins. Services, Inc., 124 N.C. App. 332, 335-36, 477 S.E.2d 211, 214-15 (1996)). "Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt." N.C. State Bar v. Sheffield, 73 N.C. App. 349, 354, 326 S.E.2d 320, 323 (1985) (citation omitted).
"`If the [trial court's] decision is supported by [competent] evidence, the district court's findings are binding on appeal, even if there is evidence to the contrary.'" In re J.W., K.W., 173 N.C. App. 450, 458, 619 S.E.2d 534, 540 (2005), aff'd, 360 N.C. 361, 625 S.E.2d 780 (2006) (quoting In re T.C.B., 166 N.C. App. 482, 485, 602 S.E.2d 17, 19 (2004)). Lastly, "`[a] finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. § 7B-1111 is sufficient to support a termination.'" In re J.D.S., 170 N.C. App. 244, 250, 612 S.E.2d 350, 354 , cert. denied, 360 N.C. 64, 623 S.E.2d 584 (2005) (quoting In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003)).
"[T]o find grounds to terminate parental rights under N.C. Gen. Stat. § 1111(a)(2), a trial court must perform a two-part analysis." In re J.G.B., 177 N.C. App. 375, 382, 628 S.E.2d 450, 455 (2006) (citing In re O.C., 171 N.C. App. 457, 464, 615 S.E.2d 391, 396, disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005)).
"The trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child." . . . Evidence and findings which support a determination of reasonable progress may parallel or differ from that which supports the determination of willfulness in leaving the child in placement outside the home.
Id. (quoting O.C., 171 N.C. App. at 464, 615 S.E.2d at 396) (internal quotation marks omitted). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." In re McMillon, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001). "A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." In re Nolen, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995) (citing In re Becker, 111 N.C. App. 85, 95, 431 S.E.2d 820, 826-27 (1993)).
In the instant case, both children have been in DSS custody and foster care since September 2004; therefore, S.S.S. and S.L.S. lived outside Respondent's home for more than the twelve months required by the statute. Furthermore, the children were removed from Respondent's care because Respondent did not provide a safe environment for the children.
On 12 January 2005, the court ordered that Respondent "establish and maintain a safe and stable home" and "demonstrate appropriate parenting skills." The court restated this directive nine times in orders entered 6 April 2005, 19 May 2005, 27 July 2005, 27 September 2005, 4 January 2006, 20 March 2006, 24 April 2006, 10 July 2006 and 11 December 2006. DSS repeatedly expressed concern about whether Respondent had established a safe home for her children, because Respondent continued to reside with Blackmon, despite Blackmon's history of domestic violence.
Respondent's attorney, Antoinette Adams, advised Respondent that as long as she lived with Blackmon, the court would be unlikely to sanction placement of the children with her. At the termination hearing, Respondent testified that she intended to remain with Blackmon because he was the father of her third child. This evidence supports the trial court's findings of fact and conclusions of law regarding the ground for termination, G.S. § 7B-1111(a)(2).
We conclude that the trial court's findings of fact are supported by clear, cogent and convincing evidence, and the findings also support the trial court's conclusion that grounds exist for termination of respondent's parental rights pursuant to G.S. § 7B-1111(a)(2). Because "`[a] finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. § 7B-1111 is sufficient to support a termination[,]'" In re J.D.S., 170 N.C. App. at 250, 612 S.E.2d at 354 (quoting In re Humphrey, 156 N.C. App. at 540, 577 S.E.2d at 426), we do not reach the question of whether the trial court's findings regarding neglect were also supported by clear, cogent and convincing evidence. The order terminating respondent's parental rights is
Affirmed.
Judges CALABRIA and STEPHENS concur.
Report per Rule 30(e).