JANET THOMPSON, Plaintiff.
v.
JAMES THOMPSON, Defendant.
No. COA09-162
Court of Appeals of North Carolina
Filed October 6, 2009
This case not for publication
No brief filed on behalf of plaintiff-appellee.
Tiffany Peguise-Powers for defendant-appellant.
ROBERT C. HUNTER, Judge.
Defendant James Thompson appeals the trial court's issuing a domestic violence protective order ("DVPO") to plaintiff Janet Thompson. On appeal, defendant primarily argues that the trial court erred in denying defendant's motion to dismiss at the close of plaintiff's evidence. Because, however, defendant subsequently elected to put on evidence, he waived his right to appeal the denial of his motion. As the trial court's unchallenged findings support its conclusion that defendant committed acts of domestic violence against plaintiff, we affirm.

Facts
Plaintiff and defendant were married in 1950 and separated in 2005. Plaintiff obtained a DVPO against defendant in 2005. The DVPO was renewed in 2006 but expired in October 2007.
Plaintiff again filed for a DVPO on 18 August 2008, alleging that on 17 August 2008, defendant came to plaintiff's residence and was "trying to force his way into the home" and that plaintiff is "afraid of him." The trial court entered an ex parte DVPO against defendant on 18 August 2008, and conducted a hearing on plaintiff's motion for a DVPO on 19 September 2008.
At the hearing, the trial judge noted that in the six years he had been a district court judge, he had seen plaintiff and defendant in court "at least five times" and that he "could probably testify about some of [their history]". Plaintiff then testified, explaining that she and defendant live at separate residences and that on 17 August 2008, defendant stopped by plaintiff's house after church when he saw that the couple's daughter and grandchildren where there. While outside the house, defendant talked with his daughter and hugged his grandchildren. Plaintiff tried to walk outside through the kitchen door but was unable to do so, "fe[eling] the pressure of something pushing on the door." Although plaintiff could not see around the door, she believed defendant was on the other side of the door, pushing on it, keeping her from coming outside. Plaintiff pushed back on the door, trying to keep defendant from coming into the house. Plaintiff stated that she "knew that [she] couldn't keep him out, so [she] just went on about [her] business." When defendant came into the foyer, plaintiff asked defendant to leave. Defendant told plaintiff that he wanted to visit with his daughter, but his daughter suggested that he leave. Defendant then left plaintiff's house.
Plaintiff also testified that she was afraid of defendant because he had threatened in 2005 to have her killed. When asked whether defendant had threatened her or done anything "physically or emotionally" to her recently, plaintiff was unable to remember any threats or abuse.
At the end of plaintiff's evidence, defendant moved for an involuntary dismissal of plaintiff's complaint and request for a DVPO. After the trial court denied the motion, defendant testified that on 17 August 2008, he was driving home from church when he saw his daughter's car parked at plaintiff's house. Defendant stopped to visit with his daughter and grandchildren. Although he admitting walking into the house, defendant denied ever pushing against the door while plaintiff was behind it. Defendant also stated that he left when plaintiff asked him to leave. Defendant further testified that he had never gone to plaintiff's residence prior to the incident on 17 August 2009.
The couple's son, Shawn Thompson, also testified, stating that defendant had, in fact, been to plaintiff's house prior to 17 August 2009  roughly three weeks before the incident. Defendant drove up to plaintiff's house while Shawn was outside cutting the grass. Shawn told defendant that "Mama does not want you here" and that he was "just asking for trouble . . . ." According to Shawn, defendant responded that he "c[ould] come up" to plaintiff's house. Shawn also testified that plaintiff is "definitely afraid of [defendant]." At the close of all the evidence, defendant renewed his motion to dismiss; the trial court denied the motion.
On 19 September 2008, the trial court entered a DVPO, finding that on 17 August 2008, defendant had placed plaintiff "in fear of continued harassment that rises to such a level as to inflict substantial emotional distress[.]" Based on this finding, the trial court concluded that "[t]he defendant ha[d] committed acts of domestic violence against the plaintiff" and that a DVPO was "necessary to bring about a cessation of acts of domestic violence." The trial court ordered the DVPO to be effective for a year, expiring on 19 September 2009. Defendant timely appealed the DVPO to this Court.

Discussion
Defendant first argues that the trial court erred in denying his motion for an involuntary dismissal made at the close of plaintiff's evidence.[1] Rule 41(b) of the Rules of Civil Procedure sets out the standard for a motion for an involuntary dismissal in a non-jury trial:
After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.
N.C.R. Civ. Pro. 41(b). When a motion to dismiss is made "under Rule 41(b), the trial judge `must consider and weigh all the competent evidence before him, passing upon the credibility of the witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn therefrom.'" Hammonds v. Lumbee River Elec. Membership Corp., 178 N.C. App. 1, 5, 631 S.E.2d 1, 4 (quoting Bridge Co. v. Highway Comm., 30 N.C. App. 535, 544, 227 S.E.2d 648, 653-54 (1976)), disc. review denied, 360 N.C. 576, 635 S.E.2d 598 (2006). As trier of the facts, the trial court "may weigh the evidence, find the facts against plaintiff and sustain defendant's motion at the conclusion of [plaintiff's] evidence even though plaintiff has made out a prima facie case which would have precluded a directed verdict for defendant in a jury case." Helms v. Rea, 282 N.C. 610, 619, 194 S.E.2d 1, 7 (1973).
The decision to grant an involuntary dismissal under Rule 41(b) is left to the sound discretion of the trial court. In re Oghenekevebe, 123 N.C. App. 434, 437, 473 S.E.2d 393, 396 (1996). The trial court may "decline to render any judgment until the close of all the evidence, and except in the clearest cases, [it] should defer judgment until the close of all the evidence." In re Becker, 111 N.C. App. 85, 92, 431 S.E.2d 820, 825 (1993).
Here, in this case, defendant moved to dismiss plaintiff's action at the close of her evidence. The trial court denied the motion, "reserv[ing]" ruling until the close of all the evidence. Defendant then elected to put on evidence in his defense. Where, as here, the defendant presents evidence after making a Rule 41(b) motion to dismiss, the "defendant waive[s] [the] right to appeal the denial of [the] motion to dismiss made at the close of [the] plaintiff's evidence." Karger v. Wood, 174 N.C. App. 703, 706, 622 S.E.2d 197, 200 (2005); accord Hamilton v. Hamilton, 93 N.C. App. 639, 642, 379 S.E.2d 93, 94 (1989) ("As the plaintiff presented evidence after his motion to dismiss was denied, he has waived any right to appeal from the denial of that motion."). Defendant, moreover, makes no argument explaining how the trial court abused its discretion in "defer[ring] judgment until the close of all the evidence." Becker, 111 N.C. App. at 92, 431 S.E.2d at 825.
The Supreme Court has concluded that in cases such as this one, when
the trial judge defers ruling on a Rule 41(b) motion until the close of all the evidence, there would be little point for counsel to renew the motion, for at that stage of a non-jury trial the judge must, pursuant to Rule 52, determine the facts in any event. Whether the trial judge decides the case on a motion for dismissal or at the close of all the evidence, he must, as required by Rule 52, separately make findings of fact, state his conclusions of law, and enter judgment accordingly.
O'Grady v. Bank, 296 N.C. 212, 218, 250 S.E.2d 587, 592 (1978); accord Concrete Service Corp. v. Investors Group, Inc., 79 N.C. App. 678, 684, 340 S.E.2d 755, 759 ("Where . . . the court sits as finder of fact, if it allows a Rule 41(b) motion it must find facts just as it would in entering judgment without allowing the motion. There is therefore little point in making such a motion at the close of all the evidence." (internal citations omitted)), cert. denied, 317 N.C. 333, 346 S.E.2d 137 (1986). Thus the dispositive issue on appeal is whether the evidence supports the trial court's findings of fact and whether its findings support its conclusions of law.
Defendant contends that there is insufficient evidence to support the trial court's determination that defendant placed plaintiff "in fear of continued harassment that rises to such a level as to inflict substantial emotional distress[.]" Defendant, however, failed to assign error to any of the trial court's findings of fact or conclusions of law, challenging only the court's "entry" of the DVPO.
Pertinent here, the failure to assign error to the trial court's findings "result[s] in waiver of the right to challenge the sufficiency of the evidence to support particular findings of fact." Concrete Service Corp., 79 N.C. App. at 684, 340 S.E.2d at 760. And the failure to assign error to the trial court's conclusions of law, moreover, "constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts." Fran's Pecans, Inc. v. Greene, 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999).
"A trial court may grant a protective order `to bring about the cessation of acts of domestic violence.'" Smith, 145 N.C. App. at 437, 549 S.E.2d at 914 (quoting N.C. Gen. Stat. § 50B-3 (Supp. 2000)); N.C. Gen. Stat. § 50B-3 (2007). Relevant here, an act of domestic violence is defined in part as "[p]lacing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment . .. that rises to such a level as to inflict substantial emotional distress[.]" N.C. Gen. Stat. § 50B-1(a)(2) (2007).
Here, the trial court found that on 17 August 2008, defendant placed plaintiff "in fear of continued harassment that rises to such a level as to inflict substantial emotional distress[.]" Based on this finding, the court concluded: "The defendant has committed acts of domestic violence against the plaintiff." The trial court's finding of fact supports its conclusion of law, which, in turn, justifies entry of the DVPO. We, therefore, affirm the trial court's order.
Affirmed.
Chief Judge MARTIN and Judge BRYANT concur.
Report per Rule 30(e).
NOTES
[1] As a matter of justiciability, the DVPO at issue in this case expired by its own terms on 19 September 2009. This Court has held, however, that an appeal of an expired domestic violence protective order is not moot because of the "stigma that is likely to attach to a person judicially determined to have committed [domestic] abuse" and "the continued legal significance of an appeal of an expired domestic violence protective order." Smith v. Smith, 145 N.C. App. 434, 437, 549 S.E.2d 912, 914 (2001).