IN THE MATTER OF: E.J.T.
No. COA09-562.
Court of Appeals of North Carolina.
Filed October 20, 2009.
This case not for publication
Robert S. Pleasant for petitioner-appellee.
Windy H. Rose for respondent-mother appellant.
ROBERT N. HUNTER, JR., Judge.
Respondent-mother ("Isabella")[1] appeals from an order terminating her parental rights to E.J.T ("Cooper"). We remand for additional findings of fact.
Petitioner ("Olivia") and Isabella are the great-aunt and mother, respectively, of Cooper. Cooper was conceived as the result of Isabella's non-consensual sexual encounter with an unknown male person.[2] At the time of the sexual encounter, Isabella was enrolled in high school and living in her parents' home in Durham County. When Isabella learned of her pregnancy, she disclosed the details of the incident to her parents. Together, they decided to ask Olivia, who is Isabella's maternal aunt and former childhood confidant, to take custody of Cooper at birth to rear as her own.[3] Olivia, who was not married and did not have any children of her own, agreed to the arrangement and prepared a nursery for Cooper at her home, which was also located in Durham County.
When Cooper was born, Isabella, who was then seventeen years old, decided that she wanted to breast feed him, which was contrary to her initial agreement with Olivia. Instead of leaving the hospital with Olivia as planned, Cooper returned with Isabella to her parents' home. There, Cooper remained in Isabella's care for approximately six weeks until Isabella finally delivered Cooper to Olivia as planned. After delivering Cooper to Olivia, Isabella visited Cooper a few times at the home of Olivia. Isabella also visited Cooper at church and during the family gatherings that followed. However, when Isabella made requests of Olivia to visit with Cooper unsupervised, Olivia declined those requests because she believed it was not in the best interests of Cooper. Specifically, Olivia felt that Isabella's lifestyle was unstable and was concerned about possible drug use by Isabella.[4] Also, Olivia was concerned about incidents of domestic violence in Isabella's parents' home.
Thereafter, a dispute arose concerning Isabella's visitation rights. The parties participated in counseling to try to resolve their disagreement about visitation. When an agreement was not reached, Olivia filed an action for custody of Cooper in Johnston County District Court, which was granted on 18 May 2007. After that custody determination, Isabella sought visitation rights with Cooper through counsel, but the request was denied. Then, almost a year later, on 2 May 2008, Olivia filed a petition to terminate Isabella's and the unknown father's parental rights.
Hearings were held on the petition to terminate Isabella's and the unknown father's parental rights on 22 October 2008, 5 and 26 November 2008, and 10 December 2008. The trial court found that prior to her filing the petition for termination of parental rights, Cooper had resided with Olivia in excess of two years. In that time, the trial court found that Olivia had provided a safe and fit home for Cooper. Moreover, the trial court found that other than a few items of clothing, Olivia had been the sole financial provider for Cooper. However, the trial court also noted that Olivia never requested support from Isabella, who is currently enrolled in high school and unemployed. Finally, the trial court found that Olivia intended to adopt Cooper before he was born and continues to intend to adopt Cooper in the event that he is cleared for adoption by termination of Isabella's and the unknown father's parental rights.
Based on these findings, the trial court concluded that grounds existed pursuant to section 7B-1111(a)(5) (2007)[5] of our General Statutes to terminate the unknown father's parental rights. The trial court also concluded that grounds existed pursuant to sections 7B-1111(a)(1)[6] and (7)[7] of our General Statutes to terminate both Isabella's and the unknown father's parental rights. The court further concluded that it was in Cooper's best interest to terminate both Isabella's and the unknown father's parental rights. Isabella appeals.
"On appeal, the standard of review from a trial court's decision in a parental termination case is whether there existed clear, cogent, and convincing evidence of the existence of grounds to terminate respondent's parental rights." In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996) (citing In re Becker, 111 N.C. App. 85, 92, 431 S.E.2d 820, 825 (1993). The trial court's findings in this regard are binding on appeal "even though there may be evidence to the contrary." In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988) (citing In re Montgomery, 311 N.C. 101, 112-13, 316 S.E.2d 246, 252-53 (1984)). "[I]t is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony." In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citation omitted).
We first consider Isabella's argument that the trial court erred by concluding that grounds existed pursuant to sections 7B1-111(a)(1) and (7) of our General Statutes to terminate her parental rights. N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990) (applying former statute N.C. Gen. Stat. § 7A2-89.32). In the case sub judice, the trial court concluded that Isabella had both neglected and abandoned Cooper.
Pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), the court may terminate parental rights upon a finding that the "parent has abused or neglected the juvenile." N.C. Gen. Stat. § 7B-1111(a)(1). A "[n]eglected juvenile" is defined in N.C. Gen. Stat. § 7B-101(15) as
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15). Generally, "[a] finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citation omitted).
Here, the trial court found that at the time of the termination proceedings, Cooper was receiving proper care from Olivia and residing in a "good and fit home." Moreover, the trial court found that "[t]he minor child is healthy and happy in the care of [Olivia.]" While the trial court also found that Isabella had failed to provide any support for Cooper other than several items of clothing, it also noted that Olivia never requested any support from Isabella. Additionally, the trial court found that Isabella had admitted to past use of marijuana and that Isabella had charges pending for possession of marijuana and trespassing. The trial court also found that Isabella was currently unemployed and had not finished her high school education. The trial court further found that there had been domestic violence in Isabella's home and that Isabella was not presently capable of providing a fit and proper home for Cooper. However, the trial court offered no findings on how these facts supported the conclusion that Cooper was neglected at the time of the termination proceedings.
When there is no evidence of neglect at the time of the termination proceeding, this Court has stated that
parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents.
In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000) (citation omitted). In the instant case, there was no past adjudication of neglect upon which the Court could rely. Thus, we conclude that the trial court erred by determining that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to terminate Isabella's parental rights.
We next consider the trial court's conclusion that Isabella abandoned Cooper. Pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), the court may terminate parental rights upon a finding that the "parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen. Stat. § 7B-1111(a)(7). This Court has defined abandonment as: wilful neglect and refusal to perform the natural and legal obligations of parental care and support. . . . [I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.
In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003) (quoting Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962)). The petition to terminate Isabella's parental rights was filed on 2 May 2008. Therefore, the relevant six-month statutory period was from 2 November 2007 to 2 May 2008. Here, the trial court failed to make any specific findings regarding Isabella's actions, or failure to act, during the relevant six-month statutory period.
We note that the statute requires that the child be abandoned for "at least" six months prior to the motion or petition to terminate parental rights. N.C. Gen. Stat. § 7B-1111(a)(7). Accordingly, it is within the court's discretion to consider events occurring prior to the six-month period immediately preceding the filing of the motion. However, even when considering events outside the relevant six-month statutory time period, we conclude the trial court's findings were insufficient to support its conclusion that Isabella willfully abandoned Cooper.
Instead, the trial court's findings demonstrate that although Isabella may have intended that Olivia would raise Cooper, Isabella sought to retain her rights to visitation, and did in fact exercise visitation on more than one occasion. First, the trial court found that after Isabella "delivered" Cooper to Olivia, she visited Cooper "a few times at the home of [Olivia]." The trial court found that Isabella subsequently "made requests of [Olivia] to visit with [Cooper] unsupervised." However, Olivia declined to allow Isabella unsupervised visitation because she believed it was not in the best interests of Cooper.
Thereafter, a dispute arose concerning Isabella's visitation rights. The trial court found as a fact that "the parties participated in counseling to try to resolve the disagreement about visitation." Finally, the trial court found that Olivia filed an action for custody of the child, and that Isabella "through counsel, sought visitation with [Cooper]." Altogether, Olivia's attempts at visitation are not consistent with a conclusion that she made "a willful determination to forego all parental duties and relinquish all parental claims to the child." In re Adoption of Searle, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) (citation omitted). Instead, the findings suggest that Isabella sought the opportunity to display filial affection, but was repeatedly denied. Because the trial court's findings concerning the relevant six-month statutory period are insufficient, and the findings concerning Isabella's actions outside the relevant six-month statutory period are contrary to a conclusion that she abandoned Cooper, we remand to the trial court for additional findings with regard to the six-month statutory period pursuant to N.C. Gen. Stat. § 7B-1111(a)(7).
Because we find Isabella's first argument dispositive of this case on appeal, we need not consider Isabella's remaining argument.
Reversed and remanded.
Judges GEER and BEASLEY concur.
Report per Rule 30(e).
NOTES
[1] Pseudonyms will be used throughout this opinion to ease reading and protect the anonymity of the minor child.
[2] Isabella believes she was drugged without her knowledge prior to the sexual encounter and has no clear memory of it.
[3] Olivia testified at trial that this arrangement also included her adopting Cooper at birth, but Isabella testified that she only agreed to allow Olivia to rear Cooper, which is why she never finalized the adoption agreement presented by Isabella.
[4] Isabella admitted to past use of marijuana at trial and also had charges pending for possession of marijuana and trespassing at the time of the trial, but denied that she currently used any illegal drugs.
[5] The father of a juvenile born out of wedlock has not, prior to the filing of a petition or motion to terminate parental rights:

(a) Established paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Health and Human Services, provided, the court shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and shall incorporate into the case record the Department's certified reply; or
(b) Legitimated the juvenile pursuant to provisions of G.S. 49-10 or filed a petition for this specific purpose; or
(c) Legitimated the juvenile by marriage to the mother of the juvenile; or
(d) Provided substantial financial support or consistent care with respect to the juvenile and mother.
N.C. Gen. Stat. § 7B-1111(a)(5).
[6] The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. § 7B-101 or a neglected juvenile within the meaning of G.S. § 7B-101. N.C. Gen. Stat. § 7B-1111(a)(1).
[7] The parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion, or the parent has voluntarily abandoned an infant pursuant to G.S. § 7B-500 for at least 60 consecutive days immediately preceding the filing of the petition or motion. N.C. Gen. Stat. § 7B-1111(a)(7).