IN THE MATTER OF: O.C. AND O.B., MINOR CHILDREN

No. COA04-923

(Filed 19 July 2005)

1. **Termination of Parental Rights— failure to appoint guardian ad litem for parent—substance abuse—dependency adjudication proceeding**

The trial court did not err by failing to appoint respondent mother a guardian ad litem (GAL) due to her history of substance abuse for either the hearing on termination of parental rights or the dependency adjudication proceedings that occurred nineteen months earlier, because: (1) the motion to terminate parental rights neither alleged respondent was incapable of caring for the minor children due to a debilitating condition nor did it cite N.C.G.S. § 7B-1111(a)(6), and none of the allegations in the motion tended to show respondent was incapable of providing care for the children; and (2) even assuming arguendo that the trial court failed to appoint a GAL for respondent during the adjudication proceedings and that she was even entitled to such a GAL, it does not bear a legal relationship with the validity of the later order on termination.

**2. Termination of Parental Rights— findings of fact—clear, cogent, and convincing evidence**

The trial court did not err in a termination of parental rights case by its findings of fact 19, 96, 100, 101, 114, 133, and 141 that in turn supported its conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent mother's parental rights based mostly on domestic violence and respondent's substance abuse, because the findings were supported by clear, cogent, and convincing evidence.

Appeal by respondent mother from judgment entered 21 October 2003 by Judge Louis A. Trosch, Jr. in Mecklenburg County District Court. Heard in the Court of Appeals 21 April 2005.

*Alan B. Edmonds, for petitioner-appellee Mecklenburg County Youth and Family Services.*

*Katharine Chester, for respondent mother-appellant.*

LEVINSON, Judge.

Respondent-mother (respondent) appeals from an order terminating her parental rights in the minor children, O.C. and O.B. We affirm.

A motion to terminate respondent's parental rights was filed 6 December 2002. The termination of parental rights proceeding was heard in two parts, the first being held 2 June 2003, and the second 2 September 2003. The evidence presented may be summarized as follows: Mecklenburg County Youth and Family Services ("YFS") began providing services to respondent in March 1999. On 13 November 2001 YFS filed a petition alleging the children were neglected and dependent. Respondent had been stabbed by the maternal grandmother and assaulted by her live-in boyfriend. Respondent had not addressed her substance abuse issues. On 9 January 2002 a case plan was developed through a mediated agreement, which was incorporated by reference in a 10 January 2002 order that adjudicated the minor children dependent. Respondent was required to "successfully resolve any substance or alcohol abuse issues and maintain sobriety on an ongoing basis", complete parenting classes, pursue a GED, maintain safe housing, complete a parenting capacity evaluation and domestic violence assessment, and obtain employment.

Jamesia Boyd was the YFS social worker assigned to the case between January 2002 and February 2003. While Boyd was the

IN RE O.C. & O.B.

[171 N.C. App. 457 (2005)]

caseworker, respondent was not able to complete an inpatient drug treatment program or maintain sobriety. In the spring of 2002, respondent began drug treatment twice. While she was incarcerated in the Mecklenburg County jail in July 2002, respondent completed a drug treatment, or drug education, program offered by the county jail. Following respondent's release from jail, on 2 October 2002, she tested positive for cocaine and marijuana. Respondent began inpatient treatment 26 November 2002 but did not complete the program. Respondent began treatment 23 April 2003 with the Cascade program, an intensive outpatient drug treatment program. The Cascade program recommended that respondent obtain inpatient treatment.

Respondent remained unemployed. She did not complete her GED. Respondent paid no child support. Other than completing parenting classes in October 2002, respondent did not provide proof to Boyd that she had completed any of the other items in her case plan. Respondent did visit regularly with her children and brought them gifts of toys and food. Respondent had requested that the minor children be placed with relatives. According to Boyd, YFS had investigated the placements suggested by respondent and none proved suitable.

Respondent testified. In February 2002, she left the maternal great-grandmother's home and moved into a two bedroom apartment with a male friend. Although the lease was in respondent's name, the male friend paid her rent. She borrowed money from her mother and grandmother to pay the utilities. She applied for housing through the Housing Authority, but was unable to secure public housing. Respondent began, but did not complete, an inpatient drug treatment program recommended for her by the Cascade program 30 May 2003. She did complete an inpatient program in August 2003, but did not return to the Cascade program. At the time of the termination hearing, respondent had not been employed since October of 2002. She had been looking for work unsuccessfully "from the end of last year [2002] up until April of this year [2003]." Respondent took a placement test at Central Piedmont Community College in August 2002 but had not completed any academic courses there. Respondent had visited with her children. Respondent described her visits with her children and the gifts she had provided them. Respondent stated she loves her children and asked the court for additional time to work on her substance abuse issues. Respondent requested that the court reconsider the relative placements previously investigated by YFS.

Natasha Perry testified. At the termination hearing on 2 June 2003, she was respondent's case manager with the Cascade program. When respondent tested positive for drugs, the Cascade program referred her to a 28 day inpatient treatment program. Respondent was to complete the inpatient program before continuing her treatment with the Cascade program. At the second hearing date, on 2 September 2003, Perry did not return to testify.

The children's foster mother, Geraldine Walton, testified. She had not seen respondent since the late fall of 2002. She described the children's needs. O.C. had severe eczema. Both children had allergies and O.B. was suspected of having developmental delays. Although Walton had seen respondent regularly during respondent's visits with the children, respondent had never asked about the children's medical needs.

The guardian *ad litem*, Maxine Twery, testified. She had observed many of respondent's visits with the children. According to the guardian *ad litem*, respondent did not express appropriate concern for her children's significant medical conditions. O.C. was diagnosed with ADHD and O.B. had severe speech and language delays. Both children received therapy. According to Twery, respondent's anger was a problem during visits. Respondent never inquired about the children's medical conditions or attended their therapy appointments. When asked whether Twery and the caseworker could make a home visit, respondent refused, telling them she did not want home visits.

The maternal grandmother and maternal great-grandmother testified. Both requested that their homes be considered as placement alternatives for the children.

The trial court found grounds to terminate respondent's parental rights on the basis of neglect, pursuant to N.C.G.S. § 7B-1111(a)(1), failure to make reasonable progress to correct the conditions leading to the children's removal, pursuant to N.C.G.S. § 7B-1111(a)(2), and failure to pay child support, pursuant to N.C.G.S. § 7B-1111(a)(3). The trial court determined it was in the best interests of the minor children to terminate respondent's parental rights. From this order, respondent appeals.

[1] Respondent first argues that the trial court erred by not appointing her a guardian *ad litem* due to her history of substance abuse. Respondent makes two arguments in this regard: first, that the trial

## IN RE O.C. & O.B.

[171 N.C. App. 457 (2005)]

court's failure to appoint a GAL for her for the hearing on termination of parental rights requires reversal; and second, that because the trial court failed to appoint a GAL for her during the dependency proceedings in January 2002, the 21 October 2003 order on termination of parental rights must be reversed.[1] We disagree, and discuss each of these two contentions in turn.

Respondent was not entitled to the appointment of a GAL for the hearing on the petition to terminate parental rights. N.C.G.S. § 7B-1101 (2001), the statute in effect at the commencement of the termination matter, provided in pertinent part:

In addition to the right to appointed counsel . . ., a guardian ad litem shall be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent in the following cases:

(1) Where it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6); or

(2) Where the parent is under the age of 18 years.

(Emphasis added).

N.C.G.S. § 7B-1111(a)(6) (2001) provided, in pertinent part:

That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition.

This Court, in *In re Estes*, 157 N.C. App. 513, 518, 579 S.E.2d 496, 499, *disc. review denied*, 357 N.C. 459, 585 S.E.2d 390 (2003), held "where . . . the allegations contained in the petition or motion to terminate parental rights tend to show that the respondent is incapable of properly caring for his or her child because of mental illness, the trial court is required to appoint a guardian ad litem to represent the respondent at the termination hearing."

---

1. For clarity, we will refer to the adjudication and disposition order entered as a result of the petition alleging O.C. and O.B. were neglected and dependent juveniles as the "adjudication order", and the order resulting from the motion for termination of parental rights as the "order on termination of parental rights" or "order on termination".

**IN RE O.C. & O.B.**

[171 N.C. App. 457 (2005)]

In the instant case, the motion to terminate parental rights neither alleged respondent was incapable of caring for the minor children due to a debilitating condition, nor cited G.S. § 7B-1111(a)(6). Rather, the motion alleged grounds for termination based on: (1) neglect, pursuant to G.S. § 7B-1111(a)(1); (2) failure to make reasonable progress to correct the conditions leading to the children's removal, pursuant to G.S. § 7B-1111(a)(2); and (3) failure to pay child support, pursuant to G.S. § 7B-1111(a)(3). Moreover, none of the allegations in the motion tended to show respondent was incapable of providing care for the children. The trial court did not err by failing to appoint a guardian *ad litem* for respondent for the hearing associated with the motion to terminate parental rights.

We also reject respondent's contention that the termination order on appeal must be reversed because of the trial court's failure to appoint her a GAL for the dependency adjudication proceedings occurring nineteen (19) months earlier.

N.C.G.S. § 7B-602(b)(1) (2003) governs the circumstances when a parent must be appointed a GAL for dependency proceedings:

> In addition to the right to appointed counsel . . ., a guardian ad litem shall be appointed . . . to represent a parent in the following cases:

> > (1) Where it is alleged that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101 in that the parent is incapable as the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition of providing for the proper care and supervision of the juvenile . . . .

Only the order on termination of parental rights is before this Court; the order on adjudication is not. Even assuming, *arguendo*, that the trial court failed to appoint a GAL for respondent during the adjudication proceedings and that she was even entitled to such a GAL, we reject her argument that this bears a legal relationship with the validity of the later order on termination.[2] First, there is no statutory authority for the proposition that the instant order is reversible because of a GAL appointment deficiency that may have occurred years earlier. Our legislature has adopted two separate juvenile GAL

---

2. Our review of the 13 November 2001 petition alleging neglect and dependency suggests respondent would not have been entitled to the appointment of a GAL under G.S. § 7B-602(b).

appointment provisions concerning the appointment of a GAL for a parent, one found in Article 6 of the Juvenile Code concerning petitions alleging the status of the child, G.S. § 7B-602(b), and a second, equally specific provision in Article 11 concerning the appointment of a GAL for a parent within the context of a motion or petition for termination of parental rights, G.S. § 7B-1101. Neither of these two provisions, nor anything in our Juvenile Code, evinces an intent on the part of the legislature that a failure to appoint a GAL during the <u>earlier</u> adjudication proceedings impacts a <u>later</u> order on termination of parental rights. Secondly, there is no common law authority to support such a proposition. Respondent contends *In re T.B.K.*, 166 N.C. App. 234, 603 S.E.2d 805 (2004), supports her position. However, *T.B.K.* is consistent with all of this Court's opinions concerning this subject: If the trial court fails to appoint a required GAL for a parent for the proceedings <u>associated with the order on appeal</u>, such order must be reversed. *See, e.g., In re K.R.S.*, 170 N.C. App. 643, 613 S.E.2d 318 (2005) (termination order on appeal reversed for want of GAL for termination proceedings); *In re S.B.*, 166 N.C. App. 494, 602 S.E.2d 694 (2004) (same); *In re Estes*, 157 N.C. App. 513, 579 S.E.2d 496 (2003) (same); *In re Richard v. Michna*, 110 N.C. App. 817, 431 S.E.2d 485 (1993) (same). While this Court has taken a *per se* reversible error approach to failures of the trial court to appoint a GAL <u>when such procedural deficiency concerned the orders on direct appeal</u>, adoption of the respondent's argument would represent an expansion of this area of the law that we are unwilling to craft absent a legislative mandate to do so.

We make several additional observations which help illustrate the fallacy of respondent's argument that, where the trial court fails to appoint a GAL for the parent during the adjudication proceedings, a later order on termination of parental rights must be reversed. First, this would create uncertainty and render judicial finality meaningless. Termination orders entered three, five, even ten years after the initial adjudication could be cast aside. Secondly, by necessarily tying the adjudication proceedings and termination of parental rights proceedings together, respondent misapprehends the procedural reality of matters within the jurisdiction of the district court: Motions in the cause and original petitions for termination of parental rights may be sustained <u>irrespective</u> of earlier juvenile court activity. *See In re R.T.W.*, 359 N.C. 539, 553, 614 S.E.2d 489, 497 (2005) ("Each termination order relies upon an independent finding that clear, cogent, and convincing evidence supports at least one of the grounds for termination under N.C.G.S. § 7B-1111. . . . Simply put, a termi-

nation order rests upon its own merits."). Thirdly, even if respondent was entitled to a GAL for the proceedings associated with the earlier dependency proceedings, there cannot be prejudice to her in the termination proceedings because she was not even entitled to the appointment of a GAL for the termination proceedings. Finally, respondent's argument does not account for the fact that circumstances surrounding an individual change over time: The parent may no longer have the concerns which caused his or her incapacity months or years earlier.

Finally, the consequences of reversing termination orders for deficiencies during some prior adjudication would yield nonsensical results. While the order on termination would be set aside, the order on adjudication would not; consequently, the order on adjudication would remain a final, undisturbed order in all respects. This would generate a legal quagmire for the trial court: It has continuing jurisdiction over these children by operation of the undisturbed order on adjudication, but must "undo" everything following the time the children were initially removed from the home if it ever wishes to enter a valid termination of parental rights order. This assignment of error is overruled.

[2] We next address respondent's argument that numerous findings of fact were not supported by clear, cogent and convincing evidence and, further, that the court's findings do not support its conclusion that grounds existed pursuant to G.S. § 7B-1111(a)(2) to terminate her parental rights.

Grounds for termination of parental rights must be supported by clear, cogent and convincing evidence. *See* N.C.G.S. § 7B-1111(b) (2003). G.S. § 7B-1111(a)(2) (2003) provides a parent's rights may be terminated where:

> The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. . . .

Thus, to find grounds to terminate a parent's rights under G.S. § 7B-1111(a)(2), the trial court must perform a two part analysis. *See In re Baker*, 158 N.C. App. 491, 494, 581 S.E.2d 144, 146 (2003). The trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or place-

ment outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. Evidence and findings which support a determination of "reasonable progress" may parallel or differ from that which supports the determination of "willfulness" in leaving the child in placement outside the home.

"A finding of willfulness does not require a showing of fault by the parent." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996) (citing *In re Bishop*, 92 N.C. App. 662, 669, 375 S.E.2d 676, 681 (1989)). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001) (citing *In re Nolen*, 117 N.C. App. 693, 453 S.E.2d 220 (1995)). "A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." *Nolen*, 117 N.C. App. at 699, 453 S.E.2d at 224 (citing *In re Becker*, 111 N.C. App. 85, 95, 431 S.E.2d 820, 826-27 (1993)).

With respect to the requirement that the petitioner demonstrate that the parent has not shown reasonable progress, we conclude that, under the applicable, amended statute, evidence supporting this determination is not limited to that which falls during the twelve month period next preceding the filing of the motion or petition to terminate parental rights. Our Supreme Court, in *In re Pierce*, 356 N.C. 68, 565 S.E.2d 81 (2002), recognized this when it observed:

> [D]uring the 2001 session of the General Assembly, the legislature struck the "within 12 months" limitation from the existing statute detailing the requirements for establishing grounds for the termination of parental rights. *See* Act of June 15, 2001, ch. 208, sec. 6, 2001 Sess. Laws, 111, 113. <u>Thus, under current law, there is no specified time frame that limits the admission of relevant evidence pertaining to a parent's "reasonable progress" or lack thereof</u>.

*Id.* at 75 n.1, 565 S.E.2d at 86 n.1 (emphasis added).

We next apply the foregoing principles to the instant case. Respondent challenges findings of fact numbers 19, 96, 100, 101, 114, 133, and 141:

19. The mother was to secure housing for herself and the children. She had no[t] made any progress toward securing housing as of June 2, 2003.

. . . .

96. She has started a GED Program three times since the beginning of the case plan. The mother has never completed her GED. She has never made it [past] the first session.

. . . .

100. In a period of ten to eleven months, the mother has looked for work only thirteen places. The mother is no closer to securing employment on September 2, than she was at the beginning of the case plan nor has she had employment while this case has been pending.

101. She has made no progress on the case plan goals of education or employment.

. . . .

114. [Respondent] has failed repeatedly to address her substance abuse issues. It is documented many times in Court testimony, Court Orders, and Summaries the mother has started substance abuse treatment but then failed to complete the treatment. She has begun substance abuse treatment in the same program four different times. While in jail, she did complete the program referenced in paragraph 34.

. . . .

133. [Respondent] never addressed the issue of domestic violence. She was to attend counseling at the Women's Center. YFS did not push the mother to attend this because she had not completed substance abuse treatment.

. . . .

141. Even as the termination of parental rights trial was ongoing, the mother could not complete her inpatient substance abuse treatment in twenty-eight days. She took three months to complete it and then did not enroll in after care.

The children were removed from the home pursuant to the petition for non-secure custody filed 13 November 2001 and had been in foster care for more than twelve months at the time of the termina-

tion hearing on 2 June 2003 and 2 September 2003. The conditions leading to the removal of the children were, in large measure, due to domestic violence and respondent's substance abuse.

Treatment for respondent's substance abuse was the first item on the mediated case plan. Up to and including the time of trial, respondent made six attempts to address her substance abuse. In the spring of 2002 respondent began substance abuse treatment twice but did not complete either program. While incarcerated, in July 2002, respondent did complete a drug treatment program provided by the Mecklenburg County jail. This program was not an inpatient substance abuse program. There was some evidence it was only a drug education program, though the certificate of completion labeled it a "Substance Abuse Treatment Program." On 2 October 2002, following her release from jail, respondent tested positive for marijuana and cocaine. In November 2002, respondent began drug treatment for the fourth time, but did not successfully complete the program. Respondent did not enter treatment again until the spring of 2003, when she began the Cascade program. Respondent did not complete this program. Respondent later completed a 28 day inpatient treatment program over a three month period, finishing it in August 2003.

In February 2002, respondent moved out of her grandmother's home and began sharing an apartment with a male friend who paid her rent. Respondent remained unemployed through the termination proceedings and depended on gifts of money for her support. She did not begin looking for work until the end of 2002, and was unsuccessful in doing so. Respondent did not follow through with a GED program, and did not address her issues with domestic violence.

We conclude that findings of fact numbers 19, 96, 100, 101, 114, 133, and 141 were supported by clear, cogent and convincing evidence. These findings support the trial court's conclusion of law that grounds existed to terminate respondent's parental rights pursuant to G.S. § 7B-1111(a)(2).

Because we find grounds for termination were properly established pursuant to G.S. § 7B-1111(a)(2), we need not address respondent's further arguments regarding termination pursuant to G.S. § § 7B-1111(a)(1) and (a)(3). *See In re Stewart Children,* 82 N.C. App. 651, 655, 347 S.E.2d 495, 498 (1986) (once one statutory ground for termination is established, this Court need not address assignments of error challenging other grounds). This assignment of error is overruled.

We have carefully reviewed respondent's remaining assignments of error and conclude they are without merit.

Affirmed.

Chief Judge MARTIN concurs.

Judge TYSON concurs in the result.