IN THE MATTER OF: D.N.
No. COA08-870
Court of Appeals of North Carolina
Filed December 16, 2008
This case not for publication
Mecklenburg County Attorney's Office, by Alan B. Edmonds and J. Edward Yeager, Jr., for petitioner-appellee Mecklenburg County Youth and Family Services.
Pamela Newell Williams, for the Guardian ad Litem.
Michael E. Casterline, for respondent-appellant.
CALABRIA, Judge.
A.U. ("respondent") appeals from the trial court's order terminating his parental rights as father of D.N. ("the minor child").[1] We affirm.

I. Facts
On 1 November 2006, Mecklenburg County Youth and Family Services ("YFS") filed a juvenile petition alleging abuse, neglect, and dependency ("the juvenile petition"). YFS was granted non-secure custody the same day. The juvenile petition alleged that YFS had been involved with this family since 2002, and that reports of neglect were substantiated in 2002, 2003, and 2005. The minor child was born in 2001. The minor child's parents had a history of domestic violence between them as well as substance abuse issues. Other problems with the family included unstable housing and lack of care of the minor child. YFS received a report in May 2006 alleging sexual abuse of the minor child by respondent and an acquaintance of respondent. Respondent refused to have the minor child assessed by an agency for treatment. The petition further alleged that although respondent entered into a case plan in August, the family was evicted from their home in September due to nonpayment of rent, and respondent refused to disclose where the family was living. Finally, the petition alleged that the minor child lived in unsanitary conditions at home, and arrived at day care almost daily with dirty clothes and dirty hair.
At the seven-day hearing held on 6 November 2006, respondent requested a hearing to dispute continued non-secure custody with YFS. On 30 November 2006, the trial court held a non-secure custody hearing and found that the family had moved several times creating instability for the minor child, the minor child still exhibited hygiene problems and had not been examined as requested by YFS. The trial court also found that continued non-secure custody with YFS remained necessary, and authorized YFS to continue custody, while allowing for supervised visitation between respondent and the minor child.
Respondent entered into a case plan with YFS on 24 January 2007. Pursuant to the plan, respondent was required to: (1)schedule an appointment with the "Families in Recovery to Stay Together" ("FIRST") program and follow all recommendations; (2) maintain employment and provide documentation when requested by YFS; (3) maintain a safe and stable living environment; (4) complete parenting classes; (5) attend and complete substance abuse treatment; (6) maintain regular visitation with the minor child; and (7) maintain regular contact with YFS.
An adjudication and disposition hearing was held on 15 February 2007. Respondent stipulated to some of the facts alleged in the petition, including the frequent moving of the family, the history of domestic violence between respondent and M.N., and the minor child's hygiene issues. The trial court adjudicated the child dependent and substantially adopted the case plan signed by respondent and YFS. In addition to the initial case plan requirements, the trial court ordered respondent not to allow M.N. to have contact with the minor child, nor could respondent allow anyone to live in his home or stay overnight without pre-approval by YFS. The court authorized YFS to place the minor child in respondent's home as soon as the agency determined the home was appropriate and the minor child's play therapy was set up.
A review hearing was held on 10 May 2007. At the review hearing, the trial court noted respondent's limited progress. Respondent initially secured an apartment and later moved into a house. YFS conducted a home visit and found some items that needed attention or repair. Upon a follow-up visit which had been scheduled with respondent, YFS discovered M.N. hiding in a closet, and some of the repairs had not yet been made. At the time of the hearing, respondent was incarcerated and in danger of losing both his house and his employment. Due to the incarceration, respondent was unable to make much progress with other aspects of the case plan. The trial court found the permanent plan for the minor child was reunification. The trial court ordered respondent to comply with his case plan and cooperate with a parenting capacity evaluation.
A permanency planning review hearing was held on 29 August 2007. At that time the trial court found that respondent had completed a FIRST assessment, completed substance abuse treatment as a result of a DWI charge, obtained employment, maintained regular visitation with the minor child, and had begun attending parenting classes. The court stated that based on respondent's progress "it appears that the child could return home within the next six months." The trial court ordered respondent to comply with the case plan and comply with the parenting capacity evaluation.
A subsequent permanency planning review hearing was held on 14 November 2007. The trial court found the following with regard to respondent:
[Respondent] has not completed domestic violence counseling or received mental health services as recommended. He had not provided verification of his new employment to YFS prior to today's hearing. He has not completed parenting classes. He has secured housing and provided a copy of his lease in Court today. His visits in the community were suspended due to his irate behavior. He continues to exhibit erratic behavior and makes inappropriate comments to his daughter. He has not maintained consistent contact with the assigned social worker.
The trial court changed the permanent plan from reunification to adoption, and ordered YFS to cease reunification efforts. The court suspended all visitation but noted that respondent was free to pursue his case plan on his own. Finally, the court ordered YFS to file a petition to terminate respondent's parental rights within sixty days.
On 14 January 2008, YFS filed a motion to terminate parental rights as to both parents. With regard to respondent father, YFS alleged the following grounds: (1) willfully leaving the child in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress has been made in correcting those conditions which led to the removal of the child, (2) willful failure to pay a reasonable portion of the cost of care of the child, and (3) willful abandonment for at least six months prior to the filing of the petition. On 8 February 2008, respondent father filed an answer denying the material allegations against him.
A permanency planning review hearing was held on 8 February 2008. The court found that because respondent continued to insist he had no issues to be resolved, the treatment center was unable to provide any services. Although respondent presented one pay stub in court, updated pay stubs were requested as far back as 31 October 2007. Respondent continued to attend parenting classes and maintained housing, but he failed to maintain contact with YFS after the previous review hearing. The court continued the plan of adoption and set the termination hearing for 27 March 2008.
The termination hearing was held on 27 March and 4 April 2008. After hearing all the evidence, the trial court found the following grounds to terminate respondent's parental rights as to the minor child: (1) willfully leaving the child in foster care for more than twelve months without showing to the satisfaction of the trial court that he made reasonable progress toward correcting the conditions which led to the removal of the child from the home; (2) willfully failing to pay a reasonable portion of the cost of care for the child despite being able to do so; and (3) dependency. The trial court determined that termination was in the best interests of the child, and ordered that respondent's parental rights be terminated. Respondent appeals the order and challenges all three grounds for termination.

II. Analysis
Termination of parental rights cases are determined in two phases: (1) the adjudication phase, governed by N.C. Gen. Stat. § 7B-1109; and (2) the disposition phase, governed by N.C. Gen. Stat. § 7B-1110. In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003). The petitioner has the burden of proving by clear, cogent and convincing evidence that at least one ground for termination exists. N.C. Gen. Stat. § 7B-1111(b)(2007); In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). The standard of review on appeal is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the conclusions of law are supported by the findings of fact. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied and appeal dismissed, 353 N.C. 374, 547 S.E.2d 9 (2001). Findings of fact supported by competent evidence are binding on appeal even though there may be evidence to the contrary. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). A trial court only needs to find one statutory ground for termination before proceeding to the dispositional phase of the hearing. N.C. Gen. Stat. § 7B-1111(a) (2007); In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003). In the disposition phase, the trial court determines whether termination of parental rights is in the best interests of the child. Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908.
Respondent argues the trial court erred in terminating his parental rights on the basis of dependency under N.C. Gen. Stat. § 7B-1111(a)(6), failure to pay a reasonable portion of the cost of care under N.C. Gen. Stat. § 7B-1111(a)(3), and willfully leaving the child in foster care for twelve months without showing reasonable progress toward correcting conditions which led to the child's removal under N.C. Gen. Stat. § 7B-1111(a)(2) (2007). Since we conclude the trial court did not err in terminating respondent's parental rights on the basis of N.C. Gen. Stat. § 7B-1111(a)(2), we do need not reach respondent's other arguments. See In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984) (a finding of one statutory ground is sufficient to support termination of parental rights). Respondent argues the evidence showed that at the time of the termination hearing, he had substantially complied with his case plan. In addition to the requirements of the plan, respondent also met with the minor child's play therapist, submitted to a parenting capacity evaluation, and provided money and clothing to the child. Respondent also contends that the trial court failed to properly find a link between the conditions leading to the removal of the child from the home and any deficiency in respondent's progress to correct those conditions. In effect, respondent argues that as long as respondent addressed the issues which were the primary basis of removing the minor child from the home, his rights cannot be terminated on the basis of failure to make reasonable progress even if he did not make progress on other issues which were not the basis for removing the minor child from the home. We disagree.
Parental rights may be terminated when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2007). Willfulness does not imply fault on the part of the parent, but may be established "'when the respondent had the ability to show reasonable progress, but was unwilling to make the effort.'" In re O.C. & O.B., 171 N.C. App. 457, 465, 615 S.E.2d 391, 396 (quoting In re McMillon, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001)), disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005)(internal citations omitted). Even if a parent has made some efforts to regain custody, a trial court may still find that he or she willfully left the child in foster care under section 7B-1111(a)(2). Id. (quoting In re Nolen, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995)) (internal citations omitted).
YFS assumed physical custody of the minor child on 1 November 2006. When the termination order was entered on 7 May 2008, the minor child had remained in foster care for more than twelve months. Included in the trial court's findings of fact are certain facts pertinent to the question of whether respondent complied with his case plan: (1) despite a rule in place that respondent could not have anyone stay in his home without YFS's permission, on a home visit by YFS in April 2007, the minor child's mother was discovered hiding unclothed in a closet and she later moved her adult son and other relatives into respondent's home; (2) on 12 April 2007 respondent was arrested for assault on a female leading to forty-eight days in jail and loss of employment and housing; (3) certain services for respondent and the minor child had to be postponed during a period of time when respondent was homeless; (4) during several home visits made by YFS, including in February 2008, utilities including running water were not operating; (5) visitation between respondent and the minor child had to be suspended due to respondent's agitation and threats; (6) on one occasion, respondent wore a T-shirt to visitation which had a picture of the minor child on it and a list of the respondent's accomplishments toward his case plan even though he had been told not to discuss the court case with the child; (7) respondent failed to submit to a health assessment as required by YFS and the court; and (8) respondent did not provide pay stubs proving employment when asked to do so.
Testimony taken at the termination hearing adequately supports the findings made by the trial court. YFS social worker Iesha Hicks ("Hicks") was assigned to this case from February to October 2007. Hicks testified that respondent submitted to a FIRST assessment on 2 February 2007. The assessment recommended respondent receive treatment and counseling for domestic violence and mental health issues. She stated that respondent did not complete domestic violence treatment, nor did he receive services for mental health. Respondent maintained contact with Hicks, and regularly visited with the minor child, aside from the time he was incarcerated. He completed some parenting classes and provided gifts, clothing, and money to the minor child.
YFS supervisor Nicole Bonner ("Bonner") testified regarding the incident in April 2007 when the minor child's mother was discovered hiding in respondent's home. Respondent was prohibited from allowing the minor child's mother to have contact with the minor child, and the home visits were part of an effort by YFS to place the minor child back with respondent. Respondent was also prohibited from having anyone stay in his house without input from the guardian ad litem, but he allowed the minor child's mother and her family to move in. Bonner testified that no transition to respondent's home was made because of his arrest soon after YFS's home visit in April 2007. She also related that respondent lost his job and his housing due to his incarceration, and that certain services had to be suspended for a time. On 14 November 2007, the agency recommended changing respondent's plan to termination since respondent failed to maintain employment and follow his case plan.
Social worker Lillian Wagner ("Wagner") became involved in the case in August 2007. Wagner testified that she had not received any documentation regarding domestic violence or mental health treatment for the respondent. She stated that respondent continued to assert that he did not need psychiatric help. Although he attended a mental health assessment, services were not offered to him because he said he did not have any issues and he only attended in order to comply with his case plan. Despite a request for pay stubs to prove employment, respondent had only provided one pay stub to YFS between September 2007 and March 2008. Wagner testified when respondent arrived to visit with the minor child, he wore a T-shirt which read, "DSS, give me my child back. I have a job and I have a home." She told respondent that the shirt was inappropriate. When Wagner conducted home visits in September 2007 and in March 2008, respondent's water was not working.
We conclude the foregoing evidence supports the trial court's findings regarding respondent's failure to make reasonable progress to the satisfaction of the court on his case plan and in correcting the conditions which led to the removal of the juvenile from the home. Even though evidence was also presented regarding respondent's partial compliance with some aspects of his case plan, the court did not err in concluding that he did not make sufficient reasonable progress. In re O.C. & O.B., 171 N.C. App. at 465, 615 S.E.2d at 396. Respondent's inability to maintain suitable and stable housing and employment, as well as his failure to address domestic violence and mental health issues, supports the trial court's conclusion that grounds exist to terminate respondent's parental rights based on failure to make reasonable progress. We affirm the trial court's order.
Affirmed.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).
NOTES
[1] The order also terminated the parental rights of the minor child's mother, M.N., who is not a party to this appeal.