An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1378
NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014


IN THE MATTER OF:                        Durham County
                                         No. 07 JT 34
Z.P.-S.


     Appeal by Respondent-mother from order entered 30 September 2013 by Judge Nancy E. Gordon in Durham County District Court. Heard in the Court of Appeals 19 May 2014.

     *Assistant County Attorney Robin K. Martinek for Petitioner Durham County Department of Social Services.*

     *Edward Eldred for Respondent-mother.*

     *Poyner & Spruill, LLP, by Andrew Erteschik and Carrie Virginia McMillan, for Guardian ad Litem.*


     STEPHENS, Judge.


     Respondent-mother appeals from the trial court's order terminating her parental rights to Z.P.-S. ("Zabia").[1]    We affirm.

---

[1] The parties stipulated to the use of the pseudonym "Zabia" to protect the identity of the juvenile and for ease of reading.

On 7 February 2007, the Durham County Department of Social Services ("DSS") filed a juvenile petition alleging that six-month-old Zabia was a neglected and dependent juvenile. At the time, Respondent-mother was a minor. The petition alleged that Respondent-mother had mental health issues, used illegal drugs, lacked stable housing, and had an unstable relationship with Zabia's father, including incidents of domestic violence. At the time of the petition, Zabia's maternal grandmother was the primary provider of care for Zabia, but Respondent-mother had shared that responsibility in the past. The petition further alleged that while Zabia was safe in the grandmother's home, conflict between Respondent-mother and the grandmother interfered with Zabia's care. DSS requested that the grandmother be given custody of Zabia.

By order entered on 14 June 2007, the trial court adjudicated Zabia dependent. The court found that the adjudication of dependency was a compromise, that the parties stipulated to the findings, and that "[w]hile there is evidence of neglect and of risk of neglect to the child, considering [Respondent-]mother's minority and her mental problems, there is not clear and convincing evidence of neglect by [Respondent-

---

*See* N.C.R. App. P. 3.1(b).

]mother." In the dispositional portion of the order, the trial court placed Zabia in the custody of the grandmother and ordered Respondent-mother to comply with certain directives. A few months later, the court modified its disposition by awarding DSS custody of Zabia, but maintaining Zabia's placement with the grandmother. On 14 July 2009, the court entered an order awarding guardianship to the grandmother.

On 19 May 2011, DSS filed a petition alleging that Zabia was a neglected juvenile. The petition alleged that the grandmother suffered from depression, was not consistent in attending group therapy, and was taking double doses of her sleep medication. As a result, Zabia frequently missed daycare and speech therapy, which she needed for treatment of a speech impairment. The trial court entered an order on 3 October 2011 adjudicating Zabia neglected based on a finding that she did not receive necessary medical or remedial care. The court also found that Respondent-mother's housing continued to be unstable and that she had another child. The trial court kept Zabia in the guardianship of the grandmother, subject to a protection plan.

On 30 March 2012, the trial court entered a permanency planning order terminating the grandmother's guardianship and

placing Zabia in DSS custody, based upon findings that the grandmother was struggling with depression, had difficulty regulating her medication, and had tested positive for cocaine in a random drug test. Due to the grandmother's issues, Zabia had numerous absences from school and speech therapy. The court also found that Respondent-mother expressed a desire to have Zabia placed in her home, but DSS was not able to complete a home study prior to the hearing. Respondent-mother cancelled a home visit from DSS, did not want a DSS social worker to come to her home or talk to her son, and refused to provide information regarding her mental health services. The trial court ordered Respondent-mother to cooperate with DSS's home study if she wished to pursue reunification with Zabia.

On 6 May 2013, DSS filed a petition to terminate Respondent-mother's parental rights to Zabia which alleged as grounds for termination: (1) neglect; (2) failure to make reasonable progress; and (3) willful failure to pay a reasonable portion of the cost of care for the juvenile. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3) (2013). Following a hearing, the trial court entered an order on 30 September 2013 terminating Respondent-mother's parental rights based upon the conclusion that she willfully left Zabia in foster care for more

than twelve months without making reasonable progress to correct the conditions that led to removal.  The court concluded that it was in Zabia's best interest to terminate Respondent-mother's parental rights.  Respondent-mother gave timely notice of appeal.[2]

### Standard of Review

A trial court may terminate parental rights upon a finding of any one of the grounds enumerated in our General Statutes. N.C. Gen. Stat. § 7B-1111(a).  Here, the trial court terminated Respondent-mother's parental rights pursuant to section 7B-1111(a)(2), to wit, that the parent willfully left the juvenile in foster care for more than twelve months, and the parent has not made reasonable progress to correct the conditions which led to the removal of the juvenile.  *In re O.C.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396, *disc. review denied*, 360 N.C. 64, 623 S.E.2d 587 (2005).

> [T]o find grounds to terminate a parent's rights under [section] 7B-1111(a)(2), the trial court must perform a two part analysis.  The trial court must determine by clear, cogent[,] and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing,

---

[2] The trial court also terminated the parental rights of Zabia's father, but he does not appeal.

as demonstrated by clear, cogent[,] and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*Id.*

On appeal, we review the trial court's order to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur." *In re Oghenekevebe*, 123 N.C. App. 434, 435-36, 473 S.E.2d 393, 395 (1996) (citation omitted). Any findings of fact not challenged on appeal are presumed supported by clear, cogent, and convincing evidence and are binding. *In re M.D.*, 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009).

*Discussion*

Respondent-mother argues (1) that certain of the trial court's findings of fact are not supported by clear, cogent, and convincing evidence; and (2) that the court's conclusion of law that she left Zabia in foster care for twelve months without making reasonable progress to correct the conditions that led to Zabia's removal is not supported by its findings of fact. We disagree.

*I. Challenged findings of fact*

Respondent-mother specifically challenges finding of fact numbers 19(d), 32, 65, and 67 as lacking the necessary evidentiary support. We address each challenged finding in turn.

Finding of fact number 19 details Zabia's 2007 initial adjudication of dependency. In subsection (d), the trial court found that Zabia "was found to have been neglected, though it was further found that due to [Respondent-m]other's minority and mental health issues, that she could not be held responsible for the neglect of [Zabia]." This finding is erroneous. In the 2007 adjudication order, the court found that, "[w]hile there is evidence of neglect and of risk of neglect to [Zabia], considering [Respondent-]mother's minority and her mental problems, *there is not clear and convincing evidence of neglect* by [Respondent- ]mother." (Emphasis added). We agree with Respondent-mother that finding number 19(d) is not supported by competent evidence in that it mischaracterizes the 2007 adjudication order. We conclude, however, that finding of fact number 19(d) is not necessary to support the court's ultimate determination regarding Respondent-mother's failure to make reasonable progress as a ground for termination of her parental rights. Rather, finding of fact number 19 simply details part

of the procedural history of the case. Accordingly, any error in the challenged portion of finding of fact 19 is harmless. *See In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240-41 (2006) ("When []ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error.").

Respondent-mother next takes issue with the portion of finding of fact 32 which states that, "[p]rior to her discharge from her mental health treatment, [Respondent-m]other was inconsistent in attending therapy; she did not see her providers in May 2012, she participated in June 2012, but did not participate in July 2012." Respondent-mother contends that this finding is not supported by the evidence because she participated in a telephone call to her therapist on 25 July 2012. However, the case management records describe this phone call as a "crisis contact" rather than a scheduled therapy session. Those records further document that, at the conclusion of the crisis call, the staff offered Respondent-mother a therapy appointment which she declined, citing her work schedule. Indeed, at the hearing, the trial court expressed concerns that Respondent-mother's therapists were "frequently used for crisis management[] and not for actual therapeutic

purposes." Respondent-mother does not dispute that she often missed therapy appointments and did not attend any scheduled therapy sessions in July 2012. We conclude that this portion of finding of fact 32 is supported by clear, cogent, and convincing evidence.

Respondent-mother also challenges the portion of finding of fact number 65 which states that "[Respondent-m]other's excuses for missing visitation were not consistent with making reasonable progress." The undisputed evidence established that Respondent-mother did not attend visits with Zabia at Genesis House in Durham, giving no reason for missing visits between October 2012 and March 2013 except that she felt the social workers there looked down on her. Respondent-mother's excuse for missing visits after March 2013 was that she lacked gas money. The evidence, however, showed that Respondent-mother was living in Durham at a location served by public transportation which could have taken her to the site of the visits. Respondent-mother notes that visitation issues were not a condition which led to Zabia's removal in 2007, and we agree. However, Respondent-mother's "instability" *was* a factor in Zabia's removal, and Respondent-mother's inconsistency in attending visitation is pertinent to an evaluation of her

stability as a parent. Accordingly, we conclude that the challenged portion of finding of fact 65 is supported by clear, cogent, and convincing evidence.

In finding of fact 67, the trial court found that "[Respondent-m]other has consistently shown a lack of progress with court ordered services and a lack of cooperation with court orders and Durham DSS." This is one of the court's ultimate findings, linking its other findings of fact to the conclusion that Respondent-mother's parental rights could be terminated based on section 7B-1111(a)(2). Respondent-mother counters that she made "great progress" as shown by the trial placement of Zabia with Respondent-mother ordered in December 2007 and a statement in that order that Respondent-mother "has been compliant with the court order, and she continues to make [p]rogress in all areas."

As noted *supra*, in engaging in the second part of the analysis required to terminate a parent's rights under section 7B-1111(a)(2), the trial court must determine that "as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child." *In re O.C.*, 171 N.C. App. at 465,

615 S.E.2d at 396. In undertaking this determination, "there is no specified time frame that limits the admission of relevant evidence pertaining to a parent's reasonable progress or lack thereof." *Id.* (citation, internal quotation marks, and emphasis omitted). Thus, while the court was not limited to considering Respondent-mother's progress during the twelve months immediately preceding the filing of the petition in May 2013, it also was not required to give greater weight to any progress made many years before the petition was filed than to the more recent years of the case.

Findings of fact 22-31 detail numerous programs and services that the court ordered Respondent-mother to engage in or attend beginning in November 2011. The findings further detail her inconsistency in complying or complete failure to comply with those orders. These findings of fact demonstrate Respondent-mother's lack of progress, and, as discussed below, amply support both ultimate finding of fact 67 and the trial court's conclusion of law pursuant to section 7B-1111(a)(2).

*II. Conclusion of law regarding lack of reasonable progress*

In asserting error in the trial court's conclusion, Respondent-mother concedes that Zabia was removed from her custody for the requisite amount of time. However, Respondent-

mother disputes the trial court's conclusion that she willfully failed to make reasonable progress in correcting the conditions that led to Zabia's removal. Specifically, Respondent-mother contends that her efforts to correct the conditions which led to Zabia's removal in 2007, such as Respondent-mother's age, domestic violence with the father, and drug use, are not addressed by the trial court's findings, which focus on her actions after 2011. We find Respondent-mother's arguments unavailing.

It is well-established that, under section 7B-1111(a)(2), "willfulness does not require a showing of fault by the parent." *In re Oghenekevebe*, 123 N.C. App. at 439, 473 S.E.2d at 398 (citation omitted). Further, "[a] finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." *In re Nolen*, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995) (citation omitted).

Although Zabia was originally removed from the home, in part, due to Respondent-mother's age, domestic violence with the father, and drug use, other factors which led to the removal included: (1) Respondent-mother's failure to address her mental health issues; (2) her unstable housing and employment situations; and (3) her conflict with the grandmother, who was

significantly involved in caring for Zabia.  In an order entered on 14 June 2007, the court listed the conditions which led to Zabia's removal and adjudication of Zabia as a dependent juvenile as "mental illness, past substance use, [and] instability."  In order to address these issues, the trial court ordered Respondent-mother to be substance-free, have a substance abuse evaluation and follow any resulting recommendations, have a mental health evaluation and follow any recommendations, and "maintain[] stability and develop a plan of care" for Zabia.  In a review order entered in September 2007, the trial court ordered a trial placement of Zabia with Respondent-mother under the supervision of a therapeutic foster parent and ordered Respondent-mother to complete a parenting program, receive needed mental health services, pursue her GED, and undergo random substance abuse screens.  Following the October 2011 adjudication of Zabia as a neglected juvenile, Respondent-mother was ordered to maintain stable housing and employment, re-engage in mental health treatment, attend and complete a parenting program, submit to substance abuse evaluation, and follow recommendations for treatment.  In May and August 2012, Respondent-mother was ordered to re-engage in mental health treatment, complete a parenting program, maintain stable housing

and employment, sign a release to permit DSS to monitor that treatment, and stay in contact with DSS.

The undisputed findings of fact show that Respondent-mother failed to comply with her mental health treatment and address her mental health needs. She refused to sign a release for DSS, stopped attending therapy in early September 2012, claimed that she did not need therapy, was discharged from her mental health provider for failing to attend sessions and maintain contact, was inconsistent in attendance prior to her discharge, claimed to have never taken any medication despite having been prescribed medication in connection with mental health treatment, and failed to incorporate a parenting component into her mental health treatment.

Additionally, Respondent-mother failed to maintain consistent contact with DSS, and she failed to facilitate communication between DSS and her mental health provider, which prevented DSS from being able to assess her stability and ability to care for Zabia. These findings of fact demonstrate that Respondent-mother's attempts to make progress toward regaining custody of Zabia fell short of reasonable efforts. Accordingly, we hold that the trial court did not err in

concluding that termination of Respondent-mother's parental rights was justified pursuant to section 7B-1111(a)(2).

DSS argues that the trial court erred in failing to conclude that grounds also existed to terminate Respondent-mother's rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (a)(3). However, if this Court determines that the findings of fact support one ground for termination, we need not review the other grounds. *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426-27 (2003). Having affirmed termination of Respondent-mother's parental rights based on section 7B-1111(a)(2), we do not address DSS's arguments as to the other grounds.

AFFIRMED.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).