IN THE SUPREME COURT OF NORTH CAROLINA

No. 379A19

Filed 20 November 2020

IN THE MATTER OF: A.S.M.R. and M.C.R.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 13 June 2019 by Judge Justin K. Brackett in District Court, Cleveland County. This matter was calendared for argument in the Supreme Court on 7 October 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Lauren Vaughan and Charles E. Wilson Jr. for petitioner-appellee Cleveland County Department of Social Services.*

*No brief for appellee Guardian ad Litem.*

*Leslie Rawls for respondent-appellant father.*

*J. Thomas Diepenbrock for respondent-appellant mother.*

DAVIS, Justice.

The issues in this case are whether (1) the existence of non-jurisdictional defects in an unappealed order adjudicating a juvenile to be neglected deprives a department of social services of standing to subsequently move for the termination of parental rights as to that juvenile; and (2) a trial court is required to make explicit findings in an adjudication order that jurisdiction exists under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) where evidence that clearly

establishes jurisdiction is present in the record. For the reasons set out below, we affirm the trial court's order terminating the parental rights of respondents over their two children.

## Factual and Procedural Background

This case involves a termination of parental rights proceeding initiated by petitioner Cleveland County Department of Social Services (DSS) against the respondent parents on the basis of neglect. Respondent-mother is the biological mother of two children—"Anna"[1] born in December 2015 and "Matthew" born in December 2016. Respondent-father is the legal father of Anna[2] and the biological father of Matthew. DSS first became involved with the family in June 2017 following a domestic violence incident between respondents. DSS found the family to be in need of services to address several issues related to mental health, domestic violence, and parenting, and the case was subsequently transferred for in-home case management. Due to respondents' failure to make reasonable progress to address these issues, DSS filed a juvenile petition on 1 September 2017 alleging that Anna and Matthew were neglected juveniles and obtained nonsecure custody of the children.

An adjudication hearing took place on 25 October 2017. At this proceeding, respondents waived their right to an evidentiary hearing, stipulated to the admission

---

[1] Pseudonyms are used throughout this opinion in order to protect the identities of the juveniles.

[2] The termination order also terminated the parental rights of Anna's biological father. He is not a party to this appeal.

of the juvenile petition into evidence, and stipulated that the trial court could adjudicate Anna and Matthew to be neglected based on the information contained within the petition. The trial court entered an adjudication order on 2 November 2017 concluding that the children were neglected juveniles. The trial court entered a separate disposition order on 20 November 2017 in which it ordered that the children remain in DSS custody and that respondents address issues relating to domestic violence, substance abuse, parenting skills, and housing.

The trial court held permanency planning review hearings in December 2017, February 2018, May 2018, and July 2018. Following the July 2018 hearing, the trial court changed the children's primary permanent plan to adoption. On 23 October 2018, DSS filed motions to terminate respondents' parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (2). Following a hearing on 22 May 2019, the trial court entered an order on 13 June 2019 concluding that both grounds for termination existed. The trial court also determined that it was in the children's best interests for respondents' parental rights to be terminated. Respondents gave notice of appeal to this Court pursuant to N.C.G.S. § 7B-1001(a1)(1).

**Analysis**

I. **Standing of DSS to Seek Termination of Parental Rights**

Respondents' first argument on appeal is based upon alleged evidentiary errors and insufficient findings in the trial court's 2 November 2017 adjudication order. These alleged errors concern a conclusion of law that was mislabeled as a finding of

fact, an invalid stipulation to a conclusion of law, a nonbinding stipulation as to the admission of the juvenile petition into evidence, and insufficient factual findings to support the ultimate determination of neglect. Respondents argue that (1) due to this combination of errors the trial court's adjudication order was invalid and therefore insufficient to legally place custody of the children with DSS; and (2) without a valid order granting DSS custody, DSS consequently lacked standing to move for the termination of respondents' parental rights. *See In re E.X.J.*, 191 N.C. App. 34, 39, 662 S.E.2d 24, 27 (2008) ("If DSS does not lawfully have custody of the children, then it lacks standing to file a petition or motion to terminate parental rights, and the trial court, as a result, lacks subject matter jurisdiction."), *aff'd per curiam*, 363 N.C. 9, 672 S.E.2d 19 (2009).

In response, DSS contends that respondents' assertions of error as to the adjudication order—even if correct—cannot be used to attack the standing of DSS to seek termination of respondents' parental rights because respondents failed to appeal the adjudication order. DSS asserts that the proper avenue for review of the trial court's adjudication order was an appeal of that order. Because they did not appeal from the 2 November 2017 adjudication order, DSS argues that respondents are now barred from collaterally challenging the validity of that order.

We agree with DSS that respondents are precluded from contesting the validity of the trial court's adjudication order in the present appeal, which is an appeal only of the trial court's subsequent termination order. Respondents have

abandoned any challenge to the 2 November 2017 adjudication order by failing to appeal that order. For this reason, they cannot now contest the termination order from which this appeal arises by pointing to non-jurisdictional errors allegedly contained in that prior adjudication order.

As an initial matter, respondents are correct that DSS must have had proper legal custody of the juveniles in order to possess standing to seek the termination of parental rights over the juveniles. "[S]tanding is a 'necessary prerequisite to a court's proper exercise of subject matter jurisdiction . . . .' " *Willowmere Cmty. Ass'n v. City of Charlotte*, 370 N.C. 553, 561, 809 S.E.2d 558, 563 (2018) (quoting *Crouse v. Mineo*, 189 N.C. App. 232, 236, 658 S.E.2d 33, 36 (2008)). Our General Assembly has determined that "[a]ny county department of social services, consolidated county human services agency, or licensed child-placing agency *to whom custody of the juvenile has been given by a court of competent jurisdiction*" has standing to file a petition or motion to terminate parental rights. N.C.G.S. § 7B-1103(a)(3) (2019) (emphasis added).

Even assuming, without deciding, that the 2 November 2017 adjudication order actually did contain the errors asserted by respondents, those errors did not affect DSS's standing to ultimately seek termination of respondents' parental rights. A termination proceeding is separate and distinct from an underlying adjudication proceeding. *See In re R.T.W.*, 359 N.C. 539, 553, 614 S.E.2d 489, 497 (2005) ("[A] termination order rests on its own merits."), *superseded by statute on other grounds*,

Act of Aug. 23, 2005, S.L. 2005-398, § 12, 2005 N.C. Sess. Laws 1455, 1460–61 (amending various provisions of the Juvenile Code).

Although this Court has not previously considered the precise argument raised by respondents in this case, the Court of Appeals addressed this issue over thirty years ago in *In re Wheeler*, 87 N.C. App. 189, 360 S.E.2d 458 (1987). The respondent-parent in *In re Wheeler*—whose parental rights had been terminated by the trial court—argued that a fundamental error existed in the trial court's initial order adjudicating the child to be an abused and neglected juvenile because that order failed to recite the standard of proof as required by statute. *Id.* at 193. The respondent asserted that due to this error "the order was invalid and could neither serve as [p]etitioner's . . . authority to file the [termination] petition nor bind the Court in the termination proceeding on the issue of abuse." *Id.*

The Court of Appeals agreed with the respondent that the trial court's failure to recite the applicable standard of proof constituted error but determined that the respondent had abandoned this argument. *Id.* at 193–94, 360 S.E.2d at 461. The court explained that

> the proper avenues for [r]espondent to attack the adjudication of neglect and abuse and the dispositional order granting custody to [p]etitioner were 1) appeal, . . . or 2) a motion for relief pursuant to N.C. Gen. Stat. Sec. 1A-1, Rule 60. Although collateral attack in an independent or subsequent action is a permissible means of seeking relief from a judgment or order which is void on its face for lack of jurisdiction, . . . the error in this case was not a jurisdictional error subject to that kind of challenge.

> Because no appeal was taken or other relief sought from the [adjudication] order, it remained a valid final order which was binding in the later proceeding on the facts regarding abuse and neglect which were found to exist at the time it was entered.

*Id.* at 193–94, 360 S.E.2d at 461 (citations omitted).

In *In re O.C.*, 171 N.C. App. 457, 615 S.E.2d 391 (2005), the Court of Appeals decided a similar issue. In that case, the respondent-parent argued that a termination order should be reversed due to the trial court's failure to appoint a guardian *ad litem* for her for the adjudication proceeding that had taken place nineteen months earlier. *Id.* at 462, 615 S.E.2d at 394. The Court of Appeals disagreed, ruling that even assuming that the trial court had, in fact, erred in failing to appoint a guardian *ad litem* for the adjudication proceeding, this error did not "bear[ ] [any] legal relationship with the validity of the later order on termination." *Id.* at 462, 615 S.E.2d at 394–95. The Court of Appeals held that this was so because "[o]nly the order on termination of parental rights is before th[e] Court; the order on adjudication is not." *Id.* at 462, 615 S.E.2d at 394. The Court of Appeals explained as follows the problems that would exist if the respondent's argument was allowed to prevail:

> First, this would create uncertainty and render judicial finality meaningless. Termination orders entered three, five, even ten years after the initial adjudication could be cast aside. Secondly, by necessarily tying the adjudication proceedings and termination of parental rights proceedings together, respondent misapprehends the procedural reality of matters within the jurisdiction of the district court: Motions in the cause and original petitions for termination

of parental rights may be sustained irrespective of earlier juvenile court activity. . . .

Finally, the consequences of reversing termination orders for deficiencies during some prior adjudication would yield nonsensical results. While the order on termination would be set aside, the order on adjudication would not; consequently, the order on adjudication would remain a final, undisturbed order in all respects. This would generate a legal quagmire for the trial court: It has continuing jurisdiction over these children by operation of the undisturbed order on adjudication, but must "undo" everything following the time the children were initially removed from the home if it ever wishes to enter a valid termination of parental rights order.

*Id.* at 463–64 (emphasis omitted), 615 S.E.2d at 395–96.

The Court of Appeals has reaffirmed these principles in a number of other decisions as well. *See, e.g., In re Y.Y.E.T.*, 205 N.C. App. 120, 123, 695 S.E.2d 517, 519 (2010) ("Respondents did not appeal from the trial court's adjudication and disposition order, and thus, this order and the findings and conclusions contained therein are binding on the parties."); *In re D.R.F.*, 204 N.C. App. 138, 141, 693 S.E.2d 235, 238 (2010) (declining to address the respondents' challenges to the adjudication order because "[a]n [adjudication] order remains final and valid when no appeal is taken from it").

We conclude that the principles set out in *Wheeler* and its progeny are correct. For the reasons set out in those decisions, a respondent's failure to appeal an adjudication order generally serves to preclude a subsequent collateral attack on that order during an appeal of a later order terminating the parent's parental rights.

As a result, respondents' argument on this issue lacks merit. In this appeal, respondents seek to vacate the termination order based on alleged errors contained in the underlying order adjudicating Anna and Matthew to be neglected juveniles. These alleged errors in the adjudication order did not relate to the trial court's subject matter jurisdiction and instead concerned the sufficiency of the evidence, evidentiary issues relating to the parties' stipulations, and the trial court's factual findings. Even assuming arguendo that these assertions have merit, any such errors did not affect DSS's standing to subsequently move for the termination of respondents' parental rights. The 2 November 2017 adjudication order conferred custody over the juveniles upon DSS, and—as a result—DSS possessed standing to file the motion to terminate respondents' parental rights. Accordingly, respondents' argument is overruled.

## II. UCCJEA Findings

In their second argument, respondents contend that an additional error existed in the adjudication order that was, in fact, jurisdictional and therefore rendered that order void. Respondents' argument is based on the trial court's failure to include in its adjudication order findings related to its jurisdiction under the UCCJEA. Respondents assert that "[a]n order entered under the Juvenile Code must contain findings to establish subject matter jurisdiction" under the UCCJEA. Because the adjudication order here lacked specific findings establishing that North Carolina was the home state of Anna and Matthew or setting out some other basis for concluding that jurisdiction existed under the UCCJEA, respondents assert that the adjudication

order "is invalid and has no effect." Respondents contend that because the adjudication order is void for lack of jurisdiction, the subsequent termination order that relied on the prior adjudication of neglect is also invalid.

In response, DSS asserts that nothing in the record indicates that the trial court lacked jurisdiction under the UCCJEA to enter the adjudication order. DSS further notes that respondents cite no legal authority for their contention that the omission of findings in an adjudication order that expressly demonstrate the existence of jurisdiction under the UCCJEA necessarily constitutes reversible error.

Respondents' argument is unsupported by our case law. The UCCJEA is a jurisdictional statute that aims to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody." N.C.G.S. § 50A-101, Official Comment (2019). This Court recently addressed the issue of jurisdictional findings under the UCCJEA in *In re L.T.*, 374 N.C. 567, 843 S.E.2d 199 (2020). In that case, the respondent argued that the trial court lacked jurisdiction to enter its termination order because the order did not contain findings that North Carolina (as opposed to Delaware) was the home state of the child and that, for this reason, the UCCJEA prerequisites were not satisfied. *Id.* at 569, 843 S.E.2d at 200. We disagreed, explaining as follows:

> This Court presumes the trial court has properly exercised
> jurisdiction unless the party challenging jurisdiction meets
> its burden of showing otherwise.

> The trial court must comply with the UCCJEA in order to have subject matter jurisdiction over juvenile abuse, neglect, and dependency cases and termination of parental rights cases. The trial court is not required to make specific findings of fact demonstrating its jurisdiction under the UCCJEA, but the record must reflect that the jurisdictional prerequisites of the Act were satisfied when the court exercised jurisdiction.

*Id*. at 569, 843 S.E.2d at 200–01 (citations omitted).

After examining the record, we determined that North Carolina was, in fact, the child's home state for purposes of the UCCJEA because "the record reflects that [the child] had lived in North Carolina for more than six months by the time DSS filed the juvenile petition." *Id*. at 570–71, 843 S.E.2d at 201. We therefore affirmed the trial court's termination order. *Id*. at 571, 843 S.E.2d at 202.

Here, as in *In re L.T.*, the lack of explicit findings establishing jurisdiction under the UCCJEA does not constitute error because the record unambiguously demonstrates that "the jurisdictional prerequisites in the Act were satisfied." *Id*. at 569, 843 S.E.2d at 201. The specific portion of the UCCJEA cited by respondents provides that a North Carolina court "has jurisdiction to make an initial child-custody determination" if North Carolina "is the home state of the child on the date of the commencement of the proceeding." N.C.G.S. § 50A-201(a)(1) (2019). " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C.G.S. § 50A-102(7) (2019).

The record is clear in this case that both Anna and Matthew lived in various locations in North Carolina with either respondents or the children's maternal grandmother and great-grandmother from the time of their birth through 1 September 2017 at which time DSS obtained nonsecure custody of them. Thus, because the record reflects that North Carolina was the home state of the juveniles under the UCCJEA at all relevant times, the trial court possessed jurisdiction to conduct the adjudication proceeding and enter the ensuing adjudication order.

## Conclusion

For the reasons set out above, we affirm the trial court's 13 June 2019 order terminating respondents' parental rights.

AFFIRMED.